OPINION
{¶ 1} This is an appeal from a judgment of the court of common pleas in an action in foreclosure, determining the order of priority between claims made by a construction loan *Page 2 
mortgagee and the holder of a mechanics' lien to have or share in the proceeds of the foreclosure sale. The court adopted a magistrate's decision in favor of the mortgagee. We agree, and accordingly we will affirm the judgment from which the appeal was taken.
 {¶ 2} In September of 2000, Dayton View Development Corporation ("Dayton View") contracted with Dayton Modulars, Inc. ("Dayton Modulars") for the construction by Dayton Modulars of four homes on Riverview Avenue in Dayton. The construction project was funded by a grant from the City of Dayton and by a construction loan of $300,000.00 that Dayton View obtained from Fifth Third Bank ("Fifth Third").
 {¶ 3} The Fifth Third loan was secured by an open-end mortgage on the property given by Dayton View to Fifth Third. The construction loan closed on September 5, 2000. Pursuant to its terms, Dayton Modulars was paid an advance of $44,242.40 for work it promised to perform. Those monies were paid through Fifth Third's escrow agent, Lawyer's Title Insurance Company.
 {¶ 4} As work on the project progressed, Fifth Third made three additional payments totaling $207,736.20 to Dayton Modulars upon its draw requests. The payments were made by Fifth Third from its construction loan account and deposited *Page 3 
into the bank's Dayton View Depository Account, on which drafts were written payable to Dayton Modulars.
 {¶ 5} After the foregoing amounts totaling $252,440.60 had been paid, Dayton Modulars on June 25, 2001 requested a final draw in the amount of $45,000. That amount was deposited into the Dayton View Depository Account maintained by Fifth Third, as before. However, after Dayton View defaulted on its construction loan, Fifth Third seized the $45,000 and applied it toward Dayton View's loan obligation.
 {¶ 6} Fifth Third subsequently commenced an action in foreclosure against Dayton View and obtained a judgment on its claim for relief. A sheriff's sale was ordered and performed. After costs were deducted, the net proceeds of the sale available for distribution were $67,918.59.
 {¶ 7} Dayton Modulars had perfected a mechanic's lien on its claim for $45,000 for work it performed on the property, and it asserted a priority over the claim of Fifth Third to the sale proceeds. Fifth Third moved for summary judgment, arguing that as a construction loan mortgagee its judgment for an amount in excess of the sale proceeds has priority over Dayton Modulars' subsequent mechanics lien. The issue was referred to magistrate for determination.
 {¶ 8} The magistrate filed a written decision granting *Page 4 
Fifth Third's motion for summary judgment on a finding that
Fifth Third has priority pursuant to R.C. 1311.14. Dayton Modulars filed objections. The trial court overruled the objections and adopted the magistrate's decision. Dayton Modulars filed a timely notice of appeal.
 {¶ 9} On appeal, Dayton Modulars assigns error with respect to the magistrate's decision in four particulars. Before addressing those, we will consider the statutory provisions on which that decision and the trial court's adoption of it are founded.
 {¶ 10} R.C. 1311.02 provides that every person who pursuant to a contract with the owner or the holder of another legal interest in real property provides labor or materials for improvement of the property has a lien on the property to secure payment for what he is owed. The lien applies to any current legal interests and any that are subsequently obtained.
 {¶ 11} The theory behind R.C. 1311.02, the "mechanic's lien law," is that the owner of real property should not obtain the benefit of its improvement and any consequent increase in its value at the expense of an unpaid laborer or materialman. R.C. 1311.03 contains similar provisions with respect to improvements to roads, drains, or sewers. Notice and *Page 5 
recording provisions in R.C. 1311.04, 1311.05, 1311.06 and 1311.07 make the lien binding on the current owner and any others who subsequently acquire an interest in the property.
 {¶ 12} R.C. 1311.14 operates as an exception to the foregoing provisions, and provides, in pertinent part:
 {¶ 13} "Except as provided in this section, the lien of a mortgagegiven in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually usedin the improvement in the manner contemplated in sections 1311.02 and1311.03 of the Revised Code, or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, materialsupplier's, and similar liens and all liens provided for in this chapterthat are filed for record after the improvement mortgage is filed forrecord, to the extent that the proceeds thereof are used and applied forthe purposes of and pursuant to this section. Such mortgage is a lien on the premises therein described from the time it is filed for record for the full amount that is ultimately and actually paid out under the mortgage, regardless of the time *Page 6 
when the money secured thereby is advanced.
 {¶ 14} * * *
 {¶ 15} "(F) The mortgagee shall pay out on the owners' order, directly to material suppliers or laborers who have performed labor or work or furnished material for the improvement.
 {¶ 16} "(G) The mortgagee shall pay the balance of the mortgage fund after the improvement is completed to the owner, or to whomsoever the owner directs. "In case the mortgagee pays out the fund otherwise than as provided in this section, then the lien of the mortgage to the extent that the funds had been otherwise paid, is subsequent to liens of original contractors, subcontractors, material suppliers, and laborers; but in no case is such a mortgagee obligated to pay or liable at law for more than the principal of the mortgage.
 {¶ 17} * * *
 {¶ 18} "This section, as to mortgages contemplated by this section, controls over all other sections of the Revised Code relating to mechanic's, material supplier's, contractor's, subcontractor's, laborer's, and all liens that can be had under this chapter, andshall be liberally construed in favor of such mortgagees, a substantialcompliance by such mortgagees being sufficient." (Emphasis supplied). *Page 7 
 {¶ 19} R.C. 1311.14 applies to construction loans; loans made for the improvement of real property by new construction or repair of existing defects which are secured by an open-end mortgage. See R.C. 4301.232. "While the equities in foreclosure cases generally favor the mechanic's lienor, who has increased the value of the prior mortgagee, and so created a potential windfall, these equities are not present in cases of construction loans and should not be invoked to bolster the position that a mortgagee owes the mechanic's lienor a broad duty of diligence. A mortgagee that extends a construction loan necessarily contributes heavily to the mortgaged project and relies on the new improvements to provide adequate security." Smith and Cobbe, "Questions of Priority Between Mechanics Lienors and Construction Loan Mortgagees," 38 Ohio State Law Journal 3, 17 (1977). Those considerations underlie R.C.1311.14, which clearly prescribes in favor of the mortgagee the priority to be given to the competing secured interests involved. Ohio FarmersInsurance Company v. Commercial Center Contractors Corp. (1996),11 Ohio App.3d 551.
 {¶ 20} In its operation, R.C. 1311.14 creates a priority over any R.C.1311.02 mechanics or materialman's liens subsequently obtained in favor of a prior construction loan *Page 8 
mortgagee in an amount calculated from the first dollar of the loan proceeds "actually used in the improvement" and applied "for the purposes of" the improvement. R.C. 1311.14. Therefore, because the total amount Fifth Third previously applied, $252,440.60, exceeds the value of Dayton Modular's subsequent mechanic's lien, $45,000, the magistrate reasoned that Fifth Third has priority over Dayton Modular with respect to their claims against the net proceeds of the foreclosure sale in the amount of $67,918.59. The magistrate also rejected the suggestion that Fifth Third failed to satisfy the direct payments requirements of R.C.1311.14, finding that Fifth Third substantially complied, as R.C.1311.14(G) permits.
FIRST ASSIGNMENT OF ERROR
 {¶ 21} "PRIORITY IS NOT DETERMINED BY THE DATE OF DISBURSEMENT, AS ALL DISBURSEMENTS RELATE BACK TO THE DATE OF MORTGAGE FILING."
 {¶ 22} We agree that the mortgagee's priority, in relation to a subsequent mechanic's lien, relates back to the recording of the open-end mortgage, and is not determined in relation to the dates when any draws were thereafter paid. However, the argument Dayton Modulars presents in support of this assignment departs from the error it cites. Dayton Modulars *Page 9 
questions the magistrate's observation that the first two payments made to Dayton Modulars, which together exceed the amount of its mechanic's lien, actually determines the issue presented. Dayton Modulars suggests some error in this regard, but doesn't identify what that error may have been or how Dayton Modulars was prejudiced as a result. Neither are we able to discern any such grounds.
 {¶ 23} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 24} "MORTGAGE FUNDS PAID OUT OTHERWISE THAN PROVIDED BY THE SECTION, TO THE EXTENT OTHERWISE PAID, GIVE THE CONTRACTOR'S LIEN A PRIORITY OVER THE MORTGAGE LIEN CREATED BY THE SECTION."
 {¶ 25} The magistrate found that Dayton Modulars was prejudiced by not being paid the $45,000 balance of its final draw request, and that seems obvious. Dayton Modulars argues that the finding weighs against the magistrate's finding that Fifth Third otherwise substantially complied with the payment requirements of R.C. 1311.14, which per that section protects its priority.
 {¶ 26} R.C. 1311.14(F) requires the mortgagee to pay laborers or materialmen "directly." Fifth Third paid Dayton Modulars through, first, the banks' escrow agent, and *Page 10 
thereafter through a special depository account Fifth Third
maintained for that purpose. We fail to see how the latter payments were not made "directly" to Dayton Modulars. To the extent that the payment through Fifth Third's escrow agent was not made directly, the liberal construction and substantial compliance provisions of R.C.1311.14(G) compel a finding that, inasmuch as Dayton Modulators received the payment from the escrow agent, the requirements of that section were satisfied. Furthermore, contrary to Dayton Modulars' suggestion, substantial compliance is no less significant than actual or express compliance, and has no bearing on any prejudice that Dayton Modulars otherwise suffered.
 {¶ 27} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 28} "LIENS PREDATING THE FILING OF THE CONSTRUCTION MORTGAGE ARE SUPERIOR TO THE RESULTING MORTGAGE LIEN."
 {¶ 29} The magistrate so observed, and we agree. R.C. 1311.14 applies to mechanic's liens that are perfected after the mortgage is recorded, as Dayton Modulars was. The magistrate's suggestion that when the work was commenced could have a bearing on priority is irrelevant, as Dayton Modulars commenced its work after Fifth Third's mortgage was recorded.
 {¶ 30} The third assignment of error is overruled. *Page 11 
 FOURTH ASSIGNMENT OF ERROR
 {¶ 31} "EQUITABLE CONSIDERATIONS SHOULD BE CONSIDERED IN GRANTING DMI'S MOTION AND AWARDING DMI THE FULL AMOUNT OF ITS MECHANIC'S LIEN."
 {¶ 32} Dayton Modulars complains that the magistrate misapplied the holding in Ohio Farmer's Insurance Company to reject Dayton Modulars' claim of equitable estoppel because the facts of that case and the present case differ. Dayton Modulars argues that Fifth Third should bear the risk of its loss because of Fifth Third's close relationship with Dayton View and Dayton View's alleged misconduct in its dealings in this matter.
 {¶ 33} We are not persuaded that any alleged misconduct of Dayton View or its employees has any bearing on the right of priority that R.C.1311.14 confers on Fifth Third. Significantly, Dayton Modulars fails to explain how it was misled to its detriment by Fifth Third. The bank's mortgage was of record. As a result, Dayton Modulars was on notice that it stood at risk of a loss if Dayton View defaulted on its mortgage obligation as it did.
 {¶ 34} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed. *Page 12 
 WOLFF, P.J. And DONOVAN, J., concur. *Page 1