ABC SUPPLY COMPANY, INC. et al.

v.

CUSTOM INSTALLATION, INC. et al.; Caticchio et al., Appellants;
Forest City & North American Lumber et al., Appellees.

[Cite as *ABC Supply Co. v. Custom Installation, Inc.* (1993), 89 Ohio App.3d 758.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63107.

Decided Aug. 9, 1993.

*Michael J. Caticchio,* for appellants.

*Robert J. Valerian,* for appellee Forest City & North American Lumber.

*John F. Trebets,* for appellee Great Eastern.

---

KRUPANSKY, Judge.

Defendants-appellants Pat Caticchio, Trustee ("Trustee"), Michael and Joanne Behnke and Timothy and Sharon Chapman appeal from an order of the trial court granting summary judgment in favor of defendants-appellees Forest City & North American Lumber ("FC/NAL") and Great Eastern on their mechanic's lien foreclosure claims.

The case *sub judice* was commenced in the trial court on March 28, 1988 to foreclose mechanic's liens against three residential properties identified as sublots 27, 47 and 50 in the Meadow Estates Subdivision in Solon, Ohio ("the Properties"). The action was filed by one lien claimant against three defendants and the case was subsequently expanded by amended complaint to include a total of twenty defendants, including the above five individuals and FC/NAL and Great Eastern, who are parties to this appeal. The underlying facts are undisputed. FC/NAL and Great Eastern filed cross-claims to foreclose their mechanic's liens on the Properties during the proceedings and the Trustee, the Behnkes and the Chapmans filed replies to the cross-claims for foreclosure on February 7, 1989.

DJM Great Homes Construction Company ("DJM") was the developer of single-family residential dwellings in the subdivision and initial record owner of the three Properties. DJM began constructing a residential unit on sublot 27 in late 1986 "on spec.," *i.e.* without a contract from an ultimate purchaser. DJM entered into written agreements to construct residential units on sublots 47 and 50 with the Behnkes and with Timothy Chapman, dated January 4, 1987 and January 16, 1987, respectively. These contracts were not recorded with the Cuyahoga County Recorder's office. FC/NAL supplied lumber and Great East-

ern installed fireplace masonry for the residences constructed by DJM on the three Properties.

DJM encountered financial difficulties during construction of the residences on the three sublots which led to the filing of three liens by FC/NAL on October 28, 1987 and three liens by Great Eastern on November 18, 1987 in the case *sub judice*. The lien claimants served copies of lien affidavits on DJM, who was the original record owner of each of the three Properties, but did not serve copies on the Trustee, the Behnkes or the Chapmans, who acquired by deed the Properties after the work was performed. DJM assigned its interest in the three Properties to the Trustee on January 22, 1988 after the liens were filed and the Trustee ultimately completed construction of the residences and sold two of the Properties to the Behnkes and the Chapmans.

The three parties filed cross-motions for summary judgment in the trial court, together with briefs in opposition to their two opponents' motions for summary judgment. FC/NAL and Great Eastern argued they timely perfected their respective mechanic's liens against the three Properties as follows, *viz.*:

### FC/NAL

| Sublot Number | Lien Amount | Date Completed | Date Filed | Date Served | Date Title Transfer |
|---|---|---|---|---|---|
| 27 | $14,649.29 | 10/5/87 | 10/28/87 | 10/28/87 | 1/22/88 |
| 47 | $11,878.38 | 9/15/87 | 10/28/87 | 10/28/87 | 11/5/87 |
| 50 | $13,860.78 | 10/2/87 | 10/28/87 | 10/28/87 | 7/29/88 |

### Great Eastern

| Sublot Number | Lien Amount | Date Completed | Date Filed | Date Served | Date Title Transfer |
|---|---|---|---|---|---|
| 27 | $7,620 | 11/2/87 | 11/18/87 | 12/24/88 | 1/22/88 |
| 47 | $4,080 | 11/2/87 | 11/18/87 | 12/24/88 | 11/5/87 |
| 50 | $4,080 | 11/2/87 | 11/18/87 | 12/24/88 | 7/29/88 |

The Trustee, the Behnkes and the Chapmans argued to the contrary that FC/NAL and Great Eastern served only DJM and did not properly serve them with necessary affidavits to perfect their lien claims against the three Properties. The three parties did not dispute the amount of the lien claims or the timeliness of filing the affidavits of lien with the Cuyahoga County Recorders Office, however; the dispute is limited solely to whether affidavits of lien were timely served and sent to the correct parties.

The trial court granted summary judgment in favor of lien claimants FC/NAL and Great Eastern and denied the cross-motions for summary judgment of the Trustee, the Behnkes and the Chapmans in an order journalized March 29, 1991. The trial court subsequently made this judgment final by entering a three-page

journal entry December 23, 1991 which contained the express language "no just reason for delay" pursuant to Civ.R. 54(B) and ordered payment of the above amounts from bonds substituted by the Trustee for the liens on the Properties. The Trustee, the Behnkes and the Chapmans timely appeal, raising three assignments of error.

The first and second assignments of error challenge the trial court's ruling on the cross-motions for summary judgment as follows:

"I.   The court erred as a matter of law and to the prejudice of the appellants in denying appellants' motion for summary judgment.

"II.   The court erred as a matter of law and to the prejudice of the appellants in granting appellees' motion for summary judgment."

The first assignment of error lacks merit and the second assignment is well taken in part.

■■   The Behnkes and the Chapmans [1] contend in their first assignment of error that the trial court improperly enforced the mechanic's lien claims of FC/NAL and Great Eastern in the case *sub judice* contrary to R.C. 1311.-011(B)(1).   R.C. 1311.011, enacted in 1977 and commonly known as the "Home Owners' Amendment" to the mechanic's lien statutes, establishes certain additional requirements governing the enforcement of mechanic's liens in the context of residential construction contracts.   See *Buy–Rite Lumber Co. v. Discenza* (Dec. 10, 1992), Cuyahoga App. Nos. 63745, 63753, 63757 and 63758, unreported, 1992 WL 369242;   Weinberger, Ohio's Supplemental Mechanics' Lien Law (1981), 8 N.Ky.L.Rev. 277.

R.C. 1311.011(B)(1) specifically provides that in order to enforce a mechanic's lien in this context, the lien claimant must serve the "owner, part owner, or lessee" an affidavit of lien prior to full payment of the residential construction contract price.   R.C. 1311.011(B)(1) provides as follows:

"(1) No subcontractor, materialman, or laborer has a lien to secure payment for work done, or for labor, materials, machinery, or fuel furnished by him, in connection with a home construction contract between the original contractor and the owner, part owner, or lessee or in connection with a dwelling or residential unit of condominium property, that is the subject of a home purchase contract, if the owner, part owner, or lessee paid the original contractor in full or *if the purchaser has paid in full for the amount of the home construction or home purchase contract price, and the payment was made prior to the owner's, part*

---

1.   The Trustee does not argue the first assignment of error.

*owner's, or lessee's receipt of a copy of an affidavit of mechanic's lien pursuant to section 1311.07 of the Revised Code."* (Emphasis added.)

The Behnkes and the Chapmans argue the mechanic's liens in the case *sub judice* are unenforceable under R.C. 1311.011(B)(1) since they paid for their respective residences in full and have never received an affidavit of mechanic's lien from FC/NAL or Great Eastern. The Behnkes and the Chapmans contend the lien affidavits sent by the lien claimants to DJM prior to their payment of the contract price did not satisfy this provision since they became the "owners" of the properties entitled to service of lien affidavits when they entered the unrecorded executory contracts to purchase the completed residences from DJM, *viz.*, January 4, 1987 and January 16, 1987, respectively.

The Behnkes and the Chapmans support this argument by citing the general definitions set forth in R.C. 1311.01, which include the interest of "purchasers" within the definition of "owner" and provides as follows:

"As used in sections 1311.01 to 1311.24, inclusive, of the Revised Code:

"(A) 'Owner,' 'part owner,' or 'lessee' includes all the interests either legal or equitable, which such person may have in the real estate upon which the improvements contemplated under such sections are made, *including the interests held by any person under contracts of purchase,* whether in writing or otherwise." (Emphasis added.)

This argument ignores the fact, however, that the subsequently enacted statutory provisions specifically governing residential construction contracts distinguish between "owners" and "purchasers.". R.C. 1311.011(B) expressly excludes "purchasers" from the definition of "owner" for purposes of receiving lien affidavits, contrary to the argument of the Behnkes and the Chapmans. Weinberger, *supra,* 8 N.Ky.L.Rev. at 281–284.

R.C. 1311.011 classifies residential construction contracts at the time of formation into two types depending upon whether or not the buyer has a pre-existing ownership interest in the real estate where the residence is to be constructed. R.C. 1311.011(A)(1) applies where the buyer has a pre-existing ownership interest in the real estate and specifically excludes "purchasers" of real property as follows:

"(1) *'Home construction contract'* means a contract entered into between an original contractor and *an owner, part owner, or lessee* for the building, construction, repair, replacement, remodeling, alteration, conversion, modernization, or improvement of any single or double family dwelling or portion of the dwelling or a residential unit of any condominium property that has been submitted to the provisions of Chapter 5311. of the Revised Code; an addition to any land; or the construction, replacement, installation, or improvement of driveways, sidewalks,

swimming pools, porches, garages, carports, landscaping, fences, fallout shelters, siding, roofing, storm windows, awnings, and other improvements that are adjacent to single or double family dwellings or upon lands that are adjacent to single or double family dwellings or residential units or condominium property, *if the dwelling, residential unit of condominium property, or land is used or is intended to be used as a personal residence by the owner, part owner, or lessee.*" (Emphasis added).

R.C. 1311.011(A)(2), however, specifically applies to "purchasers" when the buyer has no pre-existing interest in the real estate as follows:

"(2) *'Home purchase contract'* means a contract for the purchase of any single or double family dwelling or residential unit of a condominium property that has been subjected to the provisions of Chapter 5311. of the Revised Code *if the purchaser uses or intends to use the dwelling, a unit of a double dwelling, or the condominium unit as his personal residence.*"   (Emphasis added.)

■ The reason for the statutory distinction between a "purchaser" and the "owner, part owner or lessee" of a property for purposes of providing an affidavit of lien in this context is manifest.  Under unrecorded executory "home purchase contracts," mechanic's lien claimants do not have any notice of the equitable interest of purchasers and accordingly cannot serve a potential purchaser with an affidavit of lien.  See *R.W.I. Supply Co., Inc. v. Knight* (Sept. 11, 1992), Lake App. No. 92–L–021, unreported, 1992 WL 233183; *R.W.I. Supply Co., Inc. v. Witt* (Dec. 18, 1992), Lake App. Nos. 92–L–040, 92–L–041 and 92–L–042, 1992 WL 387372.  However, under "home construction contracts" mechanic's lien claimants can identify the record owner of the property for purposes of serving such notice by conducting a title examination.  *Id.*

The record demonstrates the Behnkes and the Chapmans entered into "home purchase contracts" rather than "home construction contracts" since they had no prior ownership interest in the real estate upon which the residential units were to be constructed by DJM.  As a result, the Behnkes and the Chapmans had the status of "purchasers" under the home purchase contracts upon execution of the contracts in January 1987 and did not qualify at that time as "owners" within the scope of R.C. 1311.011(B)(1) for purposes of receiving an affidavit of lien.  DJM was the "owner" of the properties at the time the two home purchase contracts were executed and remained the "owner" at the time FC/NAL properly filed and served its affidavits of lien.  FC/NAL filed and served its affidavits of lien on October 28, 1987.  The sublot 47 property was transferred to the Behnkes seven days thereafter on November 5, 1987.  The sublot 50 property was transferred to the Chapmans nine months thereafter on July 29, 1988.  There is no dispute DJM received service of the FC/NAL lien affidavits prior to payment by the

Behnkes and the Chapmans of the full home purchase contract price, so enforcement of the FC/NAL mechanic's liens is not precluded by R.C. 1311.011(B)(1).

The Trustee, the Behnkes and the Chapmans contend in their second assignment of error that even if service by FC/NAL and Great Eastern of lien affidavits on DJM alone was sufficient to comply with the "owner" notice provision of R.C. 1311.011(B)(1), the service on DJM was not timely made.

R.C. 1311.07 governs the service of copies of lien affidavits filed with the county recorder on the property owner in this context and provides as follows:

"Copy of affidavit served on owner

"Every person filing an affidavit, provided for in section 1311.06 of the Revised Code, shall *within thirty days after the filing thereof* serve on the owner, part owner, or lessee of such premises or his agent, a copy thereof, but if none of such persons can be found within the county where such premises are situated, then such copy shall be *served by posting the same in some conspicuous place on said premises within ten days after the expiration of said thirty days.*" (Emphasis added.)

The Trustee, the Behnkes and the Chapmans contend FC/NAL did not demonstrate compliance with this provision since FC/NAL filed its mechanic's lien affidavits with the Cuyahoga County Recorder on October 28, 1987 and sent copies to DJM by certified mail *on the same day.* However, it is well established that substantial compliance with this notice provision is sufficient to perfect a mechanic's lien even when a copy of the affidavit is served before the affidavit is filed with the county recorder. See *R.W.I. Supply Co., Inc. v. Knight, supra; R.W.I. Supply Co., Inc. v. Witt, supra.* Consequently, even if FC/NAL served its lien affidavits on DJM the same day prior to filing the lien affidavits with the county recorder, summary judgment was properly granted in favor of FC/NAL on its lien claims as a matter of law.

The Trustee, the Behnkes and the Chapmans likewise argue Great Eastern failed to demonstrate that it timely served DJM with copies of its lien affidavits. Based on our review of the record *sub judice,* we are compelled to agree. The record demonstrates that Great Eastern's response to interrogatories stated the date of "service" of the lien affidavits on DJM was February 25, *1986,* which was approximately twenty-one months *prior* to the filing of the lien affidavits with the Cuyahoga County Recorder's office on November 18, 1987. R.C. 1311.06(B)(1) requires service of affidavits of lien in this context within sixty days from the date on which the last labor, work or material was performed or furnished; therefore, Great Eastern's liens have not been perfected due to faulty compliance with the statute.

Two partners in Great Eastern subsequently filed affidavits in opposition to appellants' motions for summary judgment, seeking to overcome this defect by stating they posted a copy of the lien affidavit on each of the Properties on December 24, *1988*. However, this date was more than one year *following* the filing of the affidavits with the county recorder. Consequently, even if alternative service on DJM by posting was appropriate since DJM operated from offices in Lake County and could not be found within Cuyahoga County, Great Eastern has failed to demonstrate that such affidavits were timely posted within the forty-day period after filing as required by R.C. 1311.07.

Accordingly, the first and second assignments of error of the Trustee, the Behnkes and the Chapmans are well taken in part. The order of the trial court granting summary judgment in favor of FC/NAL on its mechanic's liens is affirmed; but the trial court's order granting summary judgment in favor of Great Eastern on its mechanic's lien claims is reversed.

The third assignment of error of the Trustee, the Behnkes and the Chapmans follows:

"The court erred as a matter of law and to the prejudice of the appellant in granting appellees prejudgment interest."

The third assignment of error of the Trustee, the Behnkes and the Chapmans is well taken in part.

■ The Trustee, the Behnkes and the Chapmans argue the trial court improperly awarded prejudgment interest to FC/NAL and Great Eastern on their mechanic's liens pursuant to R.C. 1343.03. It is well established that prejudgment interest may not be awarded in this context absent privity of contract between the lien claimant and the owner of the premises. *R.W.I. Supply Co., Inc. v. Knight, supra; R.W.I. Supply Co., Inc. v. Witt, supra; Maintenance Unlimited, Inc. v. Salem* (1984), 18 Ohio App.3d 29, 18 OBR 54, 480 N.E.2d 113; *Shaker Savings Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984; *Whitesides v. Mason* (1974), 47 Ohio App.2d 173, 1 O.O.3d 260, 352 N.E.2d 648; *Capital City Lumber Co. v. Ellerbrook* (1966), 7 Ohio App.2d 202, 36 O.O.2d 339, 220 N.E.2d 141. FC/NAL sufficiently demonstrated privity of contract with the "owner" of the Properties since it had contracted directly with DJM, which was the record owner of the Properties until after FC/NAL's liens were filed. However, since this court has reversed the trial court's judgment favoring Great Eastern on its lien claims, the award of prejudgment interest on Great Eastern's lien claims must also be reversed.

Accordingly, the third assignment of error of the Trustee, the Chapmans and the Behnkes is well taken in part.

The judgment of the trial court in favor of FC/NAL on its three liens in the amount of $14,649.29 on sublot 27, $11,878.38 on sublot 47 and $13,860.78 on sublot 50, together with statutory prejudgment interest, is affirmed. The judgment of the trial court in favor of Great Eastern on its lien claims is reversed.

The judgment is affirmed on the judgment for FC/NAL and reversed on the judgment for Great Eastern and the cause is remanded for further proceedings according to law since the trial court's partial judgment entry contained the clause "no just reason for delay."

*Judgment accordingly.*

JOHN F. CORRIGAN, P.J., and STILLMAN, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.