GUERNSEY BANK, Appellant,

v.

MILANO SPORTS ENTERPRISES, L.L.C. et al., Appellees.

[Cite as *Guernsey Bank v. Milano Sports Ents., L.L.C.,*
177 Ohio App.3d 314, 2008-Ohio-2420.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–382.

Decided May 20, 2008.

316

318

McFadden, Winner & Savage and Joseph C. Winner; and Plunkett Cooney P.C. and Amelia A. Bower, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., Daniel J. Minor, and Brenda K. Bowers, for appellee Sauer Inc.

Onda LaBuhn & Rankin, Timothy S. Rankin, and Benjamin W. Ogg, for appellee Hertz Equipment Rental Corporation.

Thompson Hine, L.L.P., John B. Kopf III, and Gabe J. Roehrenbeck, for appellee Esco Electrical Contractors, Inc.

---

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Guernsey Bank, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Hertz Equipment Rental Corporation, Sauer Inc., and Esco Electrical Contractors, Inc. For the following reasons, we affirm in part and reverse in part.

{¶ 2} On May 7, 2003, Joseph Milano Jr. entered into a real estate purchase contract with ABS Associates to purchase property located at 6810 Oak Creek Drive in Columbus, Ohio for $470,000. Milano planned to convert the indoor tennis court facility on that property into an ice rink, and he executed a lease agreement with ABS so he could begin renovations immediately.

{¶ 3} In June 2003, Milano hired Esco to perform all of the electrical work necessary to convert the facility into an ice rink. On June 13, 2003, Esco entered into a lease agreement with Hertz for the rental of two aerial work platforms. Hertz delivered the platforms to the facility on June 16, 2003. Esco began the electrical work on the facility shortly thereafter.

{¶ 4} On July 9, 2003, Milano and ABS closed on the Oak Creek Drive property. Milano financed the purchase of the property with proceeds from a $600,000 mortgage loan that he obtained from Guernsey. Milano, his wife, Mary Jo Milano, and his company, Milano Sports Enterprises, L.L.C. ("MSE") were all parties to the mortgage note. On July 10, 2003, the Franklin County Recorder recorded (1) a general warranty deed transferring the property from ABS to Milano and his wife, (2) a general warranty deed transferring the property from the Milanos to MSE, and (3) a mortgage on the property from MSE to Guernsey.

{¶ 5} Renovations on the facility proceeded throughout the remainder of 2003. During this period, both Esco and Sauer performed work on and provided materials to the project. When Milano and/or MSE failed to pay for the work performed and materials supplied to complete the renovations, Hertz, Esco, and Sauer, along with others, filed affidavits for mechanic's liens with the recorder.

{¶ 6} On January 27, 2004, Guernsey filed a foreclosure action against the Milanos and MSE. Through subsequent amendments to the complaint, Guernsey

added Hertz, Esco, and Sauer, as well as other entities that had recorded mechanic's liens, as defendants.

{¶ 7} Guernsey filed a motion for summary judgment against the Milanos and MSE on July 2, 2004. Neither the Milanos nor MSE responded. On July 26, 2004, the trial court granted Guernsey's motion and ordered the foreclosure and sale of the property. Pursuant to the trial court's order, the Franklin County sheriff appraised, advertised, and sold the property at auction. Guernsey purchased it for the appraised value—$525,000.

{¶ 8} Meanwhile, each defendant that claimed a mechanic's lien on the property filed a motion for summary judgment against Guernsey. These defendants argued that their mechanic's liens had priority over Guernsey's mortgage. Guernsey, in return, filed cross-motions for summary judgment against each defendant.

{¶ 9} In the midst of the summary judgment briefing, Guernsey sought and received leave to file a supplemental complaint against Commonwealth Land Title Insurance Company. In the supplemental complaint, Guernsey alleged that it had purchased a title insurance policy from Commonwealth on July 10, 2003. That policy provided that Commonwealth would compensate Guernsey for any loss or damage incurred because of the "[l]ack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material * * * arising from an improvement or work related to the land which is contracted for or commenced prior to the Date of Policy." Guernsey's supplemental complaint sought a declaratory judgment stating that the title insurance policy covered the loss that Guernsey would suffer if the trial court ruled that defendants' mechanic's liens were senior to Guernsey's mortgage.

{¶ 10} After answering the supplemental complaint, Commonwealth moved for summary judgment, arguing that the title insurance policy did not require it to indemnify Guernsey. In response, Guernsey filed a cross-motion for summary judgment, contending the opposite.

{¶ 11} The trial court resolved all of the pending motions for summary judgment in its January 20, 2006 decision and entry. First, the trial court concluded that the mechanic's liens had priority over Guernsey's mortgage. Based upon that conclusion, the trial court granted summary judgment to Hertz, Sauer, and Esco, and it denied summary judgment to Guernsey. Second, the trial court granted summary judgment to Guernsey on its declaratory judgment claim against Commonwealth. The trial court found that the title insurance policy obligated Commonwealth to cover the loss Guernsey incurred because its mortgage was subordinate to the mechanic's liens.

{¶ 12} Dissatisfied with the trial court's finding that the mechanic's liens took priority, Guernsey filed a motion for reconsideration. In a September 26, 2006 decision and entry, the trial court clarified its earlier decision. Although the trial court again found that the mechanic's liens took priority over Guernsey's mortgage, it altered its ruling on Esco's motion for summary judgment. The trial court concluded that Esco's mechanic's lien was valid and superior to Guernsey's mortgage, but it also found that a question of fact remained as to the amount Esco could recover. Thus, it denied Esco's motion for summary judgment in part and ordered a trial on the issue of the amount of Esco's mechanic's lien.

{¶ 13} After the September 26, 2006 decision and entry, Guernsey and Esco engaged in further discovery. Ultimately, Guernsey and Esco stipulated that Esco provided $65,444 in labor, work, and materials to the renovation project.

{¶ 14} On April 10, 2007, the trial court issued a judgment entry that resolved the priority of the liens against the property, declared that Guernsey was entitled to coverage under the title insurance policy, and confirmed the sheriff's sale of the property. The trial court also set forth the amounts due to Hertz, Sauer, and Esco to satisfy their mechanic's liens and ordered the sheriff to pay those amounts out of the proceeds of the sale of the property. The trial court included prejudgment interest in the calculation of the amounts due to Hertz, Sauer, and Esco. Finally, the trial court rendered a deficiency judgment against the Milanos and MSE in the amount remaining due under the mortgage note.

{¶ 15} Guernsey now appeals from the April 10, 2007 judgment entry and assigns the following errors:

■ Whether the trial court erred in denying the motions of summary judgment as to priority of affidavit's of mechanic's liens held by Esco Electrical Contractors, Sauer, Inc. and Hertz Rental Equipment

■ Whether the trial court erred in awarding prejudgment interest to Esco Electrical Contractors, Sauer, Inc. and Hertz Rental Equipment

■ {¶ 16} Before we address Guernsey's assignments of error, we must resolve appellees' joint motion to dismiss. In their motion, appellees argue that Guernsey is not a real party in interest to this appeal and therefore lacks standing. Appellees contend that Commonwealth—Guernsey's insurer—is the only party with standing to pursue this appeal. We disagree.

■ {¶ 17} Appellees premise their entire argument upon Civ.R. 17(A), which states that "[e]very action shall be prosecuted in the name of the real party in interest." However, under most circumstances, the Ohio Rules of Civil Procedure are not applicable to cases on appeal. *State v. McGettrick* (1987), 31 Ohio St.3d 138, 141, 31 OBR 296, 509 N.E.2d 378, fn. 5, citing Civ.R. 1(C)(1). Nevertheless, appellees' argument is not without legal basis. Under common

law, only an aggrieved party can exercise the right to appeal. *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203; *Ohio Sav. Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 56, 563 N.E.2d 1388, fn. 3. A party is not aggrieved unless it demonstrates that it has a present interest in the subject matter of the litigation and that it suffered prejudice as a result of the judgment of the lower court. Id. " 'Appeals are not allowed for the purposes of settling abstract questions, but only to correct errors injuriously affecting the appellant.' " *Willoughby Hills,* at 26, quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus.

{¶ 18} Whether Guernsey is an aggrieved party depends upon whether the trial court's judgment adversely affected it. By ruling that the mechanic's liens took priority over Guernsey's mortgage, the trial court decreased the amount of proceeds Guernsey could collect from the sale of the property. Instead of allocating the entire $525,000 to Guernsey, the trial court allocated only $136,082.17—the remainder of the purchase price after the distributions to the holders of the mechanic's liens. Thus, the trial court's judgment entry prejudiced Guernsey.

{¶ 19} Appellees' argument to the contrary arises from the judgment entry's requirement that Commonwealth—not Guernsey—remit money to the sheriff for him to distribute to the holders of the mechanic's liens. In structuring the judgment entry, the trial court attempted to simplify the transfer of money between Guernsey, Commonwealth, the sheriff, and the holders of the mechanic's liens. To address appellees' argument, we must unravel the reasoning behind the payment plan the trial court created.

{¶ 20} First, as the purchaser of the property at the sheriff's auction, Guernsey owed the sheriff the $525,000 purchase price. As a lienholder, Guernsey would then receive $136,082.17 back from the sheriff (or $525,000 minus costs and the amount paid to the holders of the mechanic's liens). Second, pursuant to the title insurance policy, Commonwealth owed Guernsey the amount that Guernsey lost because its mortgage did not have priority. In other words, Commonwealth owed Guernsey $386,988.31—the amount due to the holders of the mechanic's liens. Therefore, Commonwealth owed Guernsey money and Guernsey owed the sheriff money. The trial court simply dropped Guernsey from the equation and ordered Commonwealth to pay the amount it owed Guernsey to the sheriff instead of Guernsey. Although Guernsey actually owed the sheriff $525,000, and not $386,988.31, the difference was inconsequential because the sheriff would have returned $136,082.17 of the $525,000 to Guernsey because of its status as a lienholder.[1]

---

1. We recognize that the two sums at issue here—the $386,988.31 due to the holders of the mechanic's liens and the $136,082.17 due to Guernsey—amount to only $523,070.48, not

{¶ 21} By removing Guernsey from the payment equation, the trial court masked the prejudice that Guernsey suffered because of the subordinate position of its mortgage. As we explained above, the trial court's judgment adversely affected Guernsey by decreasing the amount it could receive from the sale proceeds. Although Guernsey turned to its insurer to cover this loss, Guernsey remains an aggrieved party until Commonwealth compensates it for the loss by paying the sheriff the money Guernsey actually owes him. Stated differently, Commonwealth does not stand in Guernsey's shoes—absorbing Guernsey's loss—until it pays the loss. See *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 387, 1872 WL 17 ("the loss is, in the first instance, that of the assured, [but] *after reimbursement or compensation,* it becomes the loss of the insurer" [emphasis added]). Because Commonwealth has not made the payment, Guernsey still bears the loss. As an aggrieved party, Guernsey has standing to bring this appeal, and consequently, we deny appellees' motion to dismiss.

{¶ 22} By Guernsey's first assignment of error, it argues that the trial court erred in denying its cross-motions for summary judgment. First, Guernsey asserts three reasons why the mechanic's liens at issue are invalid and unenforceable: (1) Esco failed to state the correct amount due to it in its affidavit for mechanic's lien, (2) Esco failed to timely file its affidavit for mechanic's lien with the recorder, (3) Hertz failed to include a sufficient description of the Oak Creek Drive property in its affidavit for mechanic's lien. Second, Guernsey argues that the mechanic's liens do not take priority over its mortgage for three reasons: (1) with no evidence that establishes that the "first visible work" occurred prior to the date on which Guernsey recorded its mortgage, appellees cannot claim priority on the basis of R.C. 1311.13(A), (2) as the holder of a construction mortgage under R.C. 1311.14, Guernsey has priority over all other liens; (3) as the holder of an open-end mortgage under R.C. 5301.232, Guernsey has priority over all other liens. We will address each argument in turn.

{¶ 23} Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, at ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as

---

$525,000. The trial court ordered Guernsey to remit the difference—$1,929.52—to the sheriff to cover certain costs.

a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 6.

{¶ 24} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id.; *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164. Rather, the moving party must affirmatively demonstrate by affidavit or by other Civ.R. 56(C) evidence that the nonmoving party has no evidence to support its claims. *Dresher*, at 293, 662 N.E.2d 264. If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Id.

■■ {¶ 25} First, Guernsey argues that its mortgage takes precedent' over Esco's mechanic's lien because deficiencies in the affidavit for mechanic's lien make the lien invalid. R.C. 1311.02 states:[2]

> Every person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, * * * and every person who as a subcontractor, laborer, or materialman, performs any labor or work or furnishes any material to an original contractor or any subcontractor, in carrying forward, performing, or completing any improvement, has a lien to secure the payment therefor upon the improvement and all interests that owner, part owner, or lessee may have or subsequently acquire in the land or leasehold to which the improvement was made or removed.

In granting mechanic's liens to laborers and material suppliers, R.C. 1311.02 prevents the owner of the property from obtaining the benefit of its improvement and any consequent increase in its value at the expense of an unpaid laborer or

---

**2.** Sub.H.B. No. 487, effective March 30, 2007, amended R.C. 1311.02 to reflect gender-neutral language. In the case at bar, we quote and apply the previous version of R.C. 1311.02, which was in effect at the time Guernsey filed its foreclosure action.

material supplier. *Fifth Third Bank v. Dayton View Community Dev. Corp.,* Montgomery App. No. 21696, 2007-Ohio-3806, 2007 WL 2164038, at ¶ 11.

{¶ 26} To perfect the type of lien recognized in R.C. 1311.02, a person must file an affidavit for mechanic's lien with the recorders of the counties in which the improved property is located. R.C. 1311.06(A). The affidavit must include (1) the amount due over and above all legal setoffs, (2) a description of the property to be charged with the lien, (3) the name and address of the person to or for whom the labor or work was performed or material was furnished, (4) the name of the owner, part owner, or lessee, if known, (5) the name and address of the lien claimant, and (6) the first and last dates that the lien claimant performed any labor or work or furnished any material to the improvement giving rise to the lien. Id. Because R.C. 1311.06 creates a right in derogation of the common law, courts must strictly construe it when determining whether a lien attaches. *Crock Constr. Co. v. Stanley Miller Constr. Co.* (1993), 66 Ohio St.3d 588, 592, 613 N.E.2d 1027; *C.C. Constance Sons v. Lay* (1930), 122 Ohio St. 468, 469, 172 N.E. 283.

{¶ 27} In the case at bar, Guernsey argues that Esco's mechanic's lien is invalid because Esco's affidavit did not correctly state the amount due over and above all legal setoffs. Esco's affidavit for mechanic's lien, recorded February 25, 2004, stated that Esco was due $70,944 for the labor and materials provided to the ice-rink renovations.

{¶ 28} When Esco moved for summary judgment as to the priority of its mechanic's lien, it attached an affidavit from David Jaynes, Esco's chief executive officer. In his affidavit, Jaynes swore to facts proving that Esco had a right to a mechanic's lien, including the fact that MSE owed Esco $70,944 over and above all legal setoffs. Thus, Esco produced evidence establishing that its affidavit for mechanic's lien complied with R.C. 1311.06(A) by including the correct amount due to it.

{¶ 29} Guernsey's challenge to Esco's compliance with R.C. 1311.06(A) consisted solely of the conclusory allegation that "Mr. Jaynes could not prove how he came up with the amount of $70,944 as the amount due." On appeal, Guernsey supplements that conclusory allegation with references to Jaynes's November 9, 2004 and February 9, 2007 depositions and to the stipulation between Guernsey and Esco that $65,444 was due to Esco.

{¶ 30} When reviewing a ruling on summary judgment, an appellate court restricts its consideration to " 'the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion.' " *Gentile v. Ristas,* 160 Ohio App.3d 765, 2005-Ohio-2197, 828 N.E.2d 1021, at ¶ 11, quoting *Am. Energy Serv., Inc. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598

N.E.2d 1315. Neither Jaynes's February 9, 2007 deposition nor the stipulation existed when the trial court decided Guernsey's motions for summary judgment and reconsideration. Consequently, we can consider testimony only from Jaynes's November 9, 2004 deposition in determining whether the trial court properly adjudicated those motions.

{¶ 31} Midway through Jaynes's November 9, 2004 deposition, Guernsey's attorney produced a "large packet of documents" that Esco had previously disclosed during discovery. From Jaynes's deposition testimony, we gather that the documents contained invoices, time sheets, and canceled checks that memorialized the labor and materials Esco expended during the renovation of the ice rink. Jaynes spent a large portion of the deposition discussing these documents, but Guernsey's attorney never made them exhibits to the deposition. With the exception of six pages, these documents do not appear in the record.

{¶ 32} Toward the end of the deposition, Guernsey's attorney asked Jaynes for a "breakdown of how you got to 70,944." Jaynes agreed to provide one. In its motion for summary judgment and on appeal, Guernsey alleged that Jaynes never turned over a breakdown.

{¶ 33} Based upon the lack of this breakdown, Guernsey asserts that the trial court erred in determining the amount of the lien. We disagree. As a party moving for summary judgment, Guernsey bore the burden of identifying those portions of the record that demonstrated that the Esco lien included the wrong amount. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. Guernsey could have accomplished this by introducing into the record the "large packet of documents" and demonstrating that the amounts recorded did not add up to $70,944. Guernsey, however, based its argument solely on conclusory statements and the absence of evidence. Neither constitutes the affirmative evidence necessary to satisfy Guernsey's burden as the party moving for summary judgment. Id.

{¶ 34} Guernsey now contends that it did not have the evidence necessary to effectively move for summary judgment on the issue of the amount of the lien. If true, Guernsey could have remedied the situation by seeking a continuance and/or a motion to compel. Guernsey's failure to secure the evidence that it needed is not a basis on which to reverse the trial court's judgment.

{¶ 35} Because Guernsey failed to identify any evidence establishing that Esco's affidavit for its mechanic's lien stated the wrong amount, we conclude that the trial court properly denied it summary judgment on that question.

{¶ 36} Guernsey next argues that Esco's lien is invalid because Esco did not timely file its affidavit for a mechanic's lien. R.C. 1311.06(B)(3) required Esco to record its affidavit "within seventy-five days from the date on which the last of the labor or work was performed or material was furnished." Esco

recorded its affidavit on February 25, 2004 and stated therein that it furnished the last labor and material on January 8, 2004. Based upon this timeline, Esco recorded its affidavit only 48 days after the last day of work—well within the 75–day window.

{¶ 37} Guernsey asserts two reasons why the trial court erred in its resolution of the timing issue—one factual and one legal. First, Guernsey argues that it was entitled to summary judgment because Esco failed to produce evidence establishing that it timely filed its mechanic's lien. When it moved for summary judgment, Guernsey identified evidence that suggested that Esco's last day of work was not January 8, 2004. In his November 9, 2004 deposition, Jaynes admitted that he did not have any documentary evidence demonstrating that January 8, 2004, was the last day Esco spent working on the ice-rink renovation. The time sheets that Esco produced showed that Esco laborers worked on the renovation on August 13 through 18, September 24 through 25, and October 20 through 24 and 27 through 30, 2003. Focusing upon this documentary evidence, Guernsey argues that Esco's last day of work was October 30, 2003, not January 8, 2004. If Guernsey is correct, then Esco recorded its affidavit for mechanic's lien well after the 75–day window closed, and thus its lien is invalid.

{¶ 38} Esco, however, responds to Guernsey's evidence with its own contrary evidence. Esco relies upon Jaynes's deposition testimony that, at Milano's request, he and three other Esco laborers terminated the wires on newly installed ice-melting equipment on January 8, 2004. Moreover, Esco points out that the Milanos and MSE admitted in their answer the allegation in Esco's complaint[3] that January 8, 2004, was its last day of work.

{¶ 39} Given the conflicting evidence, we conclude that a question of fact exists regarding the last date Esco worked on the ice-rink renovations. Consequently, we find that the trial court properly denied Guernsey summary judgment on this issue.

{¶ 40} We recognize that the trial court found that Guernsey's documentary evidence did *not* create a question of fact as to Esco's last day of work, and on that basis, it granted Esco's motion for summary judgment. However, the trial court's ruling on Esco's motion for summary judgment is not before us for review. Guernsey's first assignment of error challenges only the denial of its own motion for summary judgment, not the grant of Esco's motion for summary judgment. Because we determine appeals on the merits of the errors assigned, we will not address whether the trial court properly granted Esco summary

---

3. Esco filed a counterclaim and cross-claims seeking foreclosure.

judgment. App.R. 12(A)(1)(b); *In re Brown,* Franklin App. No. 03AP–1205, 2005-Ohio-2425, 2005 WL 1177943, at ¶ 11 (holding that appellate courts do not "attempt to construct assignments of error that may be discernable from the record"); *In re Estate of Taris,* Franklin App. No. 04AP–1264, 2005-Ohio-1516, 2005 WL 736627, at ¶ 5–6 (refusing to "address any additional contentions in the argument section of the brief that do not plainly fall under one of the listed assignments of error").

{¶ 41} Guernsey next turns to its legal argument: the work that Jaynes described as occurring on January 8, 2004, was not within the ambit of Esco's contract with MSE, so Esco could not use that date to calculate the 75–day window.

{¶ 42} The time for perfecting a lien cannot be extended by tacking together separate contracts. *King v. Cleveland Ship–Bldg. Co.* (1893), 50 Ohio St. 320, 329, 34 N.E. 436. In other words, performance of a second contract does not open another 75–day window for the filing of a lien to secure payment for labor or materials provided under an unrelated, earlier-performed contract. *Metal Glass Technologies, Inc. v. Trinity Universal Ins. Co.* (Oct. 6, 1993), Hamilton App. No. C–920519, 1993 WL 465411 ("Subsequent, secondary contracts cannot be used to delay the completion date and the resulting filing time for the original contract"). However, when work is performed or materials are delivered "under a continuous transaction reasonably under the general arrangement between the parties, it may be found that a lien could be properly filed within the period of the last labor performed or material delivered." *Talco Capital Corp. v. State Underground Parking Comm.* (1974), 41 Ohio App.2d 171, 179, 70 O.O.2d 343, 324 N.E.2d 762. See also *Specialty Minerals, Inc., v. Dunbar Mechanical, Inc.* (C.A.6, 2005), 164 Fed.Appx. 539, 541–542, quoting *Walter v. Brothers* (1932), 42 Ohio App. 15, 18, 181 N.E. 554 (stating that " '[t]he true test' " is whether the work performed is " 'a necessary part of the proper completion and performance of the work which the lien claimant undertook to do' ").

{¶ 43} In the case at bar, Jaynes testified that MSE hired Esco to perform all of the electrical work necessary to renovate the ice rink. This broad mandate includes the termination of ice-melting equipment used at the rink—the work that Jaynes said Esco completed on January 8, 2004. Consequently, we conclude that the trial court properly denied Guernsey summary judgment on its legal argument as well as its factual argument.

{¶ 44} Guernsey also assails the validity of Hertz's affidavit for its mechanic's lien, arguing that Hertz did not sufficiently describe the Oak Creek Drive property in the affidavit. We disagree.

{¶ 45} As we stated above, R.C. 1311.06(A) requires that an affidavit for a mechanic's lien include "a description of the property to be charged with the lien." Pursuant to R.C. 1311.06(D), "[f]or purposes of this section, the description of the property is sufficient if made in accordance with division (B)(1) of section 1311.04 of the Revised Code." Thus, the description in the affidavit must be one "sufficient to describe the real property for the purpose of conveyance, or [be] contained in the instrument by which the owner, part owner, or lessee took title." R.C. 1311.04(B)(1). "An incorrect description of the property that is the subject of a mechanic's lien generally vitiates that lien." *Internatl. Refractory Serv. Corp. v. Woodmen of the World Life Ins. Soc.* (1990), 68 Ohio App.3d 513, 516, 589 N.E.2d 79.

{¶ 46} In the case at bar, Hertz's affidavit for its mechanic's lien includes the following description of the Oak Creek Drive property:

*Central Ohio Roller Hockey, 6810 Oak Creek Drive, Columbus, OH 43229* in the county of *Franklin* (Legal Description: *CLEVELAND AVE, R18 T2 1/4T1, 1.1169 ACRES* ), Parcel ID # *010–196064–00.*

The general warranty deed—the instrument by which MSE took title of the property—includes a full metes and bounds description of the property, as well as the following:

Parcel No.: 010–196064

Street Address: 6810 Oak Creek Drive, Columbus, OH 43229

Thus, the general warranty deed contains the description set forth in Hertz's affidavit, i.e., the parcel number and street address of the property. As Hertz's affidavit incorporates the type of description required by R.C. 1311.04(B)(1), it is valid. Consequently, the trial court properly denied Guernsey summary judgment on the description issue.

{¶ 47} Turning from its attack on the validity of appellees' mechanic's liens, Guernsey next argues that the trial court erred in determining the priority of the liens. First, Guernsey assets that appellees cannot rely upon R.C. 1311.13 to claim priority over its mortgage. We disagree.

{¶ 48} Generally, mortgages "take effect at the time they are delivered to the recorder for record." R.C. 5301.23(A). Mechanic's liens, however, can take effect before they are recorded. Pursuant to R.C. 1311.13(A)(1):[4]

Liens under sections 1311.01 to 1311.22 of the Revised Code for labor or work performed or materials furnished prior to the recording of the notice of

---

4. The version of R.C. 1311.13(A)(1) quoted above is not the version in effect today. Am.H.B. No. 487, effective March 30, 2007, added language to R.C. 1311.13(A)(1). We quote and apply the version of R.C. 1311.13(A)(1) that was in effect when Guernsey filed its foreclosure action.

commencement pursuant to section 1311.04 of the Revised Code are effective from the date the first visible work or labor is performed or the first materials are furnished by the original contractor, subcontractor, materialman, or laborer at the site of improvement.

{¶ 49} In the case at bar, the parties do not dispute that neither the Milanos nor MSE filed a notice of commencement. Thus, pursuant to R.C. 1311.13(A)(1), appellees' mechanic's liens took effect "from the date the first visible work or labor [was] performed or the first materials [were] furnished." Id. See Curry Durham, Ohio Real Property Law and Practice (6th Ed.2006), Section 18.09[1] ("if a notice of commencement is never recorded, and if the claimant otherwise complies with all requirements, that claimant's lien is effective from the date anyone performs the first visible work or labor or furnishes the first material at the site of the private improvement").

{¶ 50} Appellees presented evidence that the "first materials [were] furnished" when Hertz delivered two aerial work platforms to the site on June 16, 2003. Thus, all of the mechanic's liens properly filed against the Oak Creek Drive property took effect on June 16, 2003. Guernsey's mortgage did not become effective until July 10, 2003—the date on which it delivered its mortgage to the recorder. Because Guernsey's mortgage became effective after the mechanic's liens became effective, the mortgage is subordinate to the mechanic's liens.

{¶ 51} In arguing otherwise, Guernsey relies upon *Huntington Natl. Bank v. Treasurer of Franklin Cty.* (1983), 13 Ohio App.3d 408, 13 OBR 493, 469 N.E.2d 535. We conclude that *Huntington* does not govern the outcome in this case. In *Huntington,* this court construed a previous version of R.C. 1311.13, which provided:

> [Mechanic's] liens shall be preferred to all other titles, liens, or encumbrances which may attach to or upon such construction, excavation, machinery, or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement.

Former R.C. 1311.13(B), 1953 H.B. No. 1.[5] This court held that the kind of activity that constituted " 'commencement of * * * construction' " turned upon a " 'visibility' " test—"whether the work performed had produced visible results" that would be "reasonably apparent to a person examining the site." *Huntington,* 13 Ohio App.3d at 409, 13 OBR 493, 469 N.E.2d 535. Furthermore, this

---

**5.** The Mechanics' Lien Act, R.C. 1311.01 through 1311.32, underwent major revision in the early 1990s. See Am.Sub.H.B. No. 238, 1990 Am.Sub.H.B. No. 238, 143 Ohio Laws, Part III, 3676. In the course of that revision, the General Assembly made the changes reflected in the version of R.C. 1311.13 applied in this case.

court stated that "[i]n order for the work to be deemed the commencement of construction, it must form a part of the work necessary for the construction and be of a nature that can afterward be considered a component part of the structure." Id.

{¶ 52} In crafting the current incarnation of R.C. 1311.13, the General Assembly did not radically depart from the judicial interpretation of the now defunct version of R.C. 1311.13. Nevertheless, the General Assembly altered R.C. 1311.13 significantly when it allowed the first furnishing of materials to trigger the effective date of mechanic's liens. Previously, in applying R.C. 1311.13, courts often concentrated solely upon results, i.e., whether visible construction had commenced. See, e.g., *Sears, Roebuck Co. v. J–Z Realty Co.* (Dec. 28, 1978), Franklin App. No. 78AP–356, 1978 WL 217298 ("the work done must be such that it is obvious that an improvement, such as a building, is to take place"); *Fryman v. McGhee* (1958), 108 Ohio App. 501, 504, 9 O.O.2d 488, 163 N.E.2d 63 ("the construction must be of such a nature as to be 'reasonably apparent' upon inspection"); *Ohio Sav. Assn. v. Bell* (1926), 25 Ohio App. 84, 86, 158 N.E. 548 (requiring "physical acts done on the premises [to] produce[ ] results visible and sufficient to indicate to a person examining the premises that the construction of the building had actually commenced, so as to charge the plaintiff with notice"). Now, however, R.C. 1311.13 requires courts to focus upon the construction process and determine when the first visible work or labor is performed or the first materials are furnished.

{¶ 53} Examining evidence of the process employed to renovate the ice rink, we find that Hertz provided the first materials on June 16, 2003. Guernsey does not dispute that fact. Therefore, pursuant to R.C. 1311.13(A)(1), we conclude that the mechanic's liens took effect on June 16, 2003—almost a full month before Guernsey recorded its mortgage.

{¶ 54} Guernsey, however, argues that Sauer cannot claim June 16, 2003, as the date on which its mechanic's lien became effective. Guernsey bases this argument upon R.C. 1311.13(A)(3). Contrary to Guernsey's contention, R.C. 1311.13(A)(3) is irrelevant to this case. That provision provides an exception to the rule articulated in R.C. 1311.13(A)(2). According to R.C. 1311.13(A)(2), mechanic's liens for labor or work performed or materials furnished after the recording of a notice of commencement are effective from the date of the recording of the notice of commencement. As we noted above, MSE never filed a notice of commencement. Therefore, neither R.C. 1311.13(A)(2) nor 1311.13(A)(3) is relevant to our analysis of the priority issue.

{¶ 55} To rebut the order of priority established through the application of R.C. 1311.13(A)(1), Guernsey argues that its mortgage has priority under R.C.

1311.14, the construction-mortgage statute. Because Guernsey's mortgage does not qualify as a construction mortgage, we disagree.

{¶ 56} Generally, a mortgage is subordinate to mechanic's liens that have an effective date prior to the date on which the mortgage is recorded. *P.K. Bellefontaine, Inc. v. Aldredge* (May 17, 1977), Logan App. No. 8–76–5, 1977 WL 199564. However, R.C. 1311.14 provides an exception to this general rule. Pursuant to R.C. 1311.14:

> Except as provided in this section, the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in the improvement * * * or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, materialman's, and similar liens * * * to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section.

{¶ 57} Thus, a mortgage used to finance improvements or pay off prior encumbrances in compliance with R.C. 1311.14 has priority over any mechanic's liens, even if the mortgage is filed after the first visible work or labor is performed or the first materials are furnished. *Wayne Bldg. & Loan Co. v. Yarborough* (1967), 11 Ohio St.2d 195, 209, 40 O.O.2d 182, 228 N.E.2d 841; *French's Inc. v. Dominic Constr., Inc.* (June 30, 1995), Trumbull App. No. 93–T–4969, 1995 WL 1100094. See also *In re Qualstan Corp.* (Bkrtcy.S.D.Ohio 2004), 310 B.R. 833, 840 ("Section 1311.14 was enacted with the intent to give to a construction mortgage priority over mechanics' liens although the mortgage was recorded subsequent to the effective date of the mechanics' liens"). In other words, "[w]here a mortgagee substantially adheres to the provisions of R.C. 1311.14, it serves to negate R.C. 1311.13, and give priority to an after-recorded [mortgage]." *Barr v. Masterpiece Homes* (July 21, 1994), Cuyahoga App. No. 65835, 1994 WL 385998. See also *Highland Sav. Assn. v. Clinton Constr. Co.* (June 28, 1976), Clinton App. No. 311, 1976 WL 189219.

{¶ 58} In the case at bar, Guernsey asserts that its mortgage is a construction mortgage because the mortgage funds paid off a prior mortgage on the Oak Creek Drive property. In support of this assertion, Guernsey relies upon a settlement statement that summarizes the financial aspects of the sale of the property. Under the subtitle "REDUCTIONS IN AMOUNT DUE TO SELLER," the statement includes an entry for "Payoff of first Mortgage to Crown NorthCorp" with $310,220.91 allocated to that entry. The trial court, however, found that this evidence was inadmissible and refused to consider it.

{¶ 59} When ruling upon a motion for summary judgment, a trial court only considers admissible evidence. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 631, 605 N.E.2d 936, fn. 4 ("Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment"); *Nationwide Life Ins. Co. v. Kallberg,* Lorain App. No. 06CA008968, 2007-Ohio-2041, 2007 WL 1238609, at ¶ 20; *Molnar v. Klammer,* Lake App. No. 2004 L 072 CA, 2005-Ohio-6905, 2005 WL 3528870, at ¶ 65; *Fray v. Toledo Edison Co.,* Lucas App. No. L–02–1260, 2003-Ohio-3422, 2003 WL 21489416, at ¶ 30. "Hearsay statements, unless an exception to the hearsay rule, are not admissible evidence in a summary judgment context." *Paulino v. McCary,* Franklin App. No. 04AP–1186, 2005-Ohio-5920, 2005 WL 2981298, at ¶ 6, fn. 1. See also *Re v. Kessinger,* Butler App. No. CA2007–02–044, 2008-Ohio-167, 2008 WL 170602, at ¶ 42; *Ullmann v. Duffus,* Franklin App. No. 05AP–299, 2005-Ohio-6060, 2005 WL 3047433, at ¶ 23; *Jones v. Greene Countrie Apts.* (June 14, 1994), Franklin App. No. 94APE01–105, 1994 WL 265656.

{¶ 60} Here, the payoff entry in the settlement statement constitutes an out-of-court statement offered for the truth of the matter asserted, and thus, it is inadmissible hearsay evidence unless it falls within one of the Evid.R. 803 or 804 exceptions. Beyond the bald assertion that "[t]he document is also admissible under R. Evid. 803," Guernsey offers no argument on the question of the settlement statement's admissibility. Arguably, the trial court could have admitted the settlement statement under Evid.R. 803(6), the business-record exception. Guernsey, however, did not provide the necessary foundation for this exception to apply. See *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 171 (setting forth the criteria necessary for evidence to qualify for admission under Evid.R. 803(6)).

{¶ 61} Without admissible evidence proving that the mortgage funds went to pay off the prior mortgage, Guernsey cannot establish that it complied with the R.C. 1311.14 requirements. Therefore, we conclude that Guernsey's mortgage did not gain priority over the mechanic's liens by virtue of R.C. 1311.14.

{¶ 62} Guernsey next argues that R.C. 5301.232, the open-end-mortgage statute, grants its mortgage priority over the mechanic's liens. We disagree.

{¶ 63} Under R.C. 5301.232(B):

A mortgage complying with division (A) of [R.C. 5301.232] and securing unpaid balances of loan advances * * * is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid

balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made.

Thus, advances a mortgagee makes after recording the mortgage take effect on the date that the mortgage was recorded, as long as the mortgage and the advances comply with the requirements of R.C. 5301.232. Curry Durham, Ohio Real Property Law and Practice (6 Ed.2006), Section 18.09[4][b][i]. Consequently, under certain circumstances, R.C. 5301.232 gives advances of mortgage funds priority over liens recorded after the mortgage but before the advance. *Colonial Mtge. Serv. Co. v. Southard* (1978), 56 Ohio St.2d 347, 10 O.O.3d 481, 384 N.E.2d 250, syllabus.

{¶ 64} In the case at bar, the record contains no evidence that Guernsey made any advances under the mortgage after it recorded the mortgage. Because no advances are at issue, R.C. 5301.232 is inapplicable to this case. Pursuant to R.C. 5301.23(A), Guernsey's mortgage took effect on the date that it was recorded— July 10, 2003. Nothing in R.C. 5301.232 entitles Guernsey to an earlier effective date than that. Therefore, we conclude that R.C. 5301.232 does not invest Guernsey's mortgage with priority over the mechanic's liens.

{¶ 65} In sum, R.C. 1311.13 entitles the mechanic's liens to priority over Guernsey's mortgage, and neither R.C. 1311.14 nor 5301.232 negates that priority. Therefore, we conclude that the trial court properly denied Guernsey's motion for summary judgment, and we overrule its first assignment of error.

{¶ 66} By Guernsey's second assignment of error, it argues that the trial court erred in granting appellees prejudgment interest. We agree.

{¶ 67} Pursuant to R.C. 1343.03(A), "when money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * [and] upon all verbal contracts entered into, * * * the creditor is entitled to interest * * *." This court addressed whether R.C. 1343.03 entitled a holder of a mechanic's lien to prejudgment interest in *Capital City Lumber Co. v. Ellerbrock* (1966), 7 Ohio App.2d 202, 36 O.O.2d 339, 220 N.E.2d 141. In that case, we held that prejudgment interest was not available because "there [was] no privity of contract between [the subcontractor] and [the owner of the property] and * * * the proceeding * * * [was] *in rem* not *in personam.*" Id. at 206, 36 O.O.2d 339, 220 N.E.2d 141. The reasoning behind our holding lay in the evolution of the Ohio mechanic's lien statutes. In 1896, the Supreme Court of Ohio declared a mechanic's lien statute unconstitutional because it authorized a subcontractor who did not have a contractual relationship with the property owner to file a lien against the property. Id., citing *Palmer v. Tingle* (1896), 55 Ohio St. 423, 45 N.E. 313. However, in 1912, the Ohio Constitution was amended to allow the General Assembly to pass laws that permitted subcontractors to secure liens against the property that they improved with their labor or materials. Id. at 207, 36 O.O.2d

339, 220 N.E.2d 141, quoting Section 33, Article II, Ohio Constitution. Based upon this change in the Ohio Constitution, the Supreme Court of Ohio found that the mechanic's lien statutes established " 'a right *in rem* and not a right *in personam.*' " *Ellerbrock,* at 207, 36 O.O.2d 339, 220 N.E.2d 141, quoting *Schuholz v. Walker* (1924), 111 Ohio St. 308, 311, 145 N.E. 537. See also *Crandall v. Irwin* (1942), 139 Ohio St. 253, 259, 22 O.O. 273, 39 N.E.2d 608 ("An action or proceeding to enforce or foreclose a mechanic's lien is an action in rem against the property upon which the lien has been perfected and does not require a judgment in personam").

{¶ 68} In other words, before the constitutional amendment, recovery under a mechanic's lien depended upon the existence of a contractual relationship between the owner and the laborer or material supplier. Without that contractual relationship, the laborer or material supplier could not pursue an action in personam, i.e., an action against the owner. After the constitutional amendment, a laborer or material supplier did not need the contractual relationship with the owner to recover unpaid fees. By virtue of a mechanic's lien, a laborer or material supplier had a statutory right to bring an action in rem, i.e., an action against the property.

{¶ 69} Applying the above, this court concluded that the subcontractor could not recover prejudgment interest under R.C. 1343.03 because its right to recovery was not based upon a written instrument or verbal contract. Rather, its right to recover arose from the mechanic's lien statute and went against the property only.

{¶ 70} Since we decided *Ellerbrock,* courts from other appellate districts have cited it for the proposition that prejudgment interest under R.C. 1343.03 is not available to a subcontractor because the subcontractor and property owner do not share privity of contract. See *Tri–State Crane Rental, Inc. v. Watson Gravel, Inc.,* Hamilton App. No. C–030392, 2004-Ohio-1262, 2004 WL 534829, at ¶ 10; *R.W.I. Supply Co., Inc. v. Knight* (Sept. 11, 1992), Lake App. No. 92–L–021, 1992 WL 233183; *Maintenance Unlimited, Inc. v. Salemi* (1984), 18 Ohio App.3d 29, 34, 18 OBR 54, 480 N.E.2d 113. Two appellate districts have taken this rule one step further, holding that a trial court *can* award prejudgment interest when privity of contract exists. *ABC Supply Co., Inc. v. Custom Installation, Inc.* (1993), 89 Ohio App.3d 758, 766, 627 N.E.2d 618; *Shaker Sav. Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 142, 7 OBR 184, 454 N.E.2d 984; *Curtis v. Nero Ent., Inc.* (Oct. 24, 1974), Cuyahoga App. No. 33502, 1974 WL 184937. On the other hand, the Second District Court of Appeals relied upon *Ellerbrock* for the proposition that "a judgment foreclosing a mechanic's lien, being an action *in rem,* is not within the scope of R.C. 1343.03." *Piqua Concrete Co. v. Centel Cable Television Co.,* Miami App. No. 87CA50, 1988 WL 35297. In a subsequent case, the Second District stated:

As noted in *Capital City Lumber Co. v. Ellerbrock* (1964), 7 Ohio App.2d 202 [36 O.O.2d 339, 220 N.E.2d 141], the reason that prejudgment interest is not allowable with respect to mechanic's liens is because an action to foreclose a mechanic's lien is not an action *in personam* but an action *in rem*. It is not a situation where the owner has obligated himself to the lienee by virtue of a contract, but a special situation in which a subcontractor is given a statutory lien against real estate.

*Western World Ins. Co. v. Erie Ins. Co.* (May 6, 1988), Montgomery App. No. 10550, 1988 WL 45126.

{¶ 71} We find that the Second District's interpretation of *Ellerbrock* most closely corresponds with the holding and reasoning of our decision and the controlling precedent. Pursuant to *Schuholz* and *Crandall, all* actions to enforce a mechanic's lien are in rem, not just those asserted by a subcontractor. Therefore, whenever a holder of a mechanic's lien enforces its lien in court, it recovers against the property based upon a statutorily granted right. Although some holders may also have contractual actions against the property owner, foreclosure on a mechanic's lien does not implicate any contractual right to recovery. *Crandall,* 139 Ohio St. at 258–259, 22 O.O. 273, 39 N.E.2d 608. As the entitlement to enforce a mechanic's lien arises as a matter of law and not from a written instrument or verbal contract, holders of mechanic's liens cannot receive prejudgment interest under R.C. 1343.03(A). See *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, at ¶ 72 (denying prejudgment interest under R.C. 1343.03(A) because the relators' entitlement to recovery arose as a matter of law and not from a written instrument, book account, settlement, verbal contract, or judgment). Accordingly, we conclude that the trial court erred in granting appellees prejudgment interest, and we sustain Guernsey's second assignment of error.

{¶ 72} For the foregoing reasons, we deny appellees' motion to dismiss. Additionally, we overrule Guernsey's first assignment of error, and we sustain Guernsey's second assignment of error. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings in accordance with law and this opinion.

Judgment affirmed in part
and reversed in part,
motion to dismiss denied,
and cause remanded.

SADLER and TYACK, JJ., concur.