Michael L. FROST and Tina
M. Campana, Plaintiffs,

v.

HOUSEHOLD REALTY CORPO-
RATION and Household Fi-
nance, Defendants.

Case No. C2–04–347.

United States District Court,
S.D. Ohio,
Eastern Division.

Filed Nov. 10, 2004.

Rachel Ary Mulchaey, Bricker & Eckler LLP, Columbus, OH, Jeffrey B. Sams, Law Office of Jeffrey B. Sams LLC, Pickerington, OH, for Plaintiffs.

Gerald Paul Ferguson, Columbus, OH, Marcel C. Duhamel, Vorys Sater Seymour & Pease LLP, Cleveland, OH, for Defendants.

## OPINION & ORDER

GREGORY L. FROST, District Judge.

This matter is before the Court for consideration of a Motion to Dismiss (Doc. # 6) filed by Defendants Household Realty Corporation and Household Finance ("Household") pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs Michael L. Frost and Tina M. Campana ("Plaintiffs") filed a Memorandum in Opposition (Doc. # 11), to which Household filed a Reply (Doc. # 19). However, the Court notified the parties of its intent to treat Household's Motion to Dismiss as a Motion for Summary Judgment on September 24, 2004. (Doc. # 21). Neither party elected to modify its previous pleadings. For the following reasons, the Court finds Household's Motion for Summary Judgment well-taken and therefore dismisses Plaintiffs' claims against Household with prejudice.

### I. Background

Plaintiffs are two individuals who reside in Ohio. (Pls.' Compl. ¶ 1). Defendants Household Realty Corporation and Household Finance are Delaware corporations licensed to conduct business in Ohio. *Id.* at ¶ 2. Household is a mortgage company offering mortgage refinance, home equity and express equity loans.

Plaintiffs bought a home in Worthington. *Id.* at ¶ 3. Subsequently, they visited Household's office in Columbus, Ohio to discuss the possibility of consolidating their debts into a home equity loan to reduce their monthly payments. *Id.* at ¶ 5. At the time of their visit, Plaintiffs had a thirty (30) year mortgage with another lender with an 8.25% payback and monthly payments of $685.00. Plaintiffs owed approximately $65,000 on that mortgage. *Id.* Household employee David Corey ("Corey") advised Plaintiffs that they should refinance their current mortgage and replace it with a Household first mortgage that would include a pay-off of their other debts. *Id.* at ¶¶ 6, 25. Corey further advised Plaintiffs that the interest rate under the Household mortgage would be 7.64% per annum if they made bi-weekly payments. *Id.* at ¶ 7.

Plaintiffs re-financed their mortgage with Household on July 27, 1999. *Id.* at ¶ 8, 32. However, once the paperwork was complete, the actual interest rate was 13.707% per annum. *Id.* Additionally, Plaintiffs claim that the paperwork incorrectly indicated that they received $6,910.12 after the three-day right of rescission expired. *Id.* at ¶ 9. Plaintiffs claim that Household retained that amount as mortgage broker fees and/or points on the loan. *Id.*

Subsequently, Plaintiffs fell behind in their mortgage payments by one month. *Id.* at ¶ 12. Then, in November 2002, Plaintiffs received a flyer in the mail from Household indicating that they had been pre-approved for a lower interest rate and a lower monthly payment. *Id.* at ¶ 12. Plaintiffs contacted Household employee Farooq Wirk ("Wirk") at Household's Dublin, Ohio office to discuss the flyer. *Id.* at ¶ 14. Wirk told Plaintiffs he could re-write their loan, and he also advised Plaintiffs to discontinue making payments

on their current Household mortgage even though Household was sending Plaintiffs letters threatening foreclosure. *Id.* at ¶ 14. By January 2003, the second loan had not been completed, so Plaintiffs disregarded Wirk's advice and made one-and-a-half payments to bring their Household mortgage current. *Id.* at ¶ 15. In February 2003, Wirk advised Plaintiffs that he would not be able to re-finance their loan with better terms. *Id.* at ¶ 16.

Plaintiffs filed this suit in state court on March 22, 2004. (Pls'. Compl.). Household was served with the Complaint on April 7, 2004 and removed it to this Court on April 30, 2004. (Doc. # 1). Essentially, Plaintiffs assert that Household arranged for Plaintiffs to get a higher interest rate than originally quoted in order for Household to be able to retain a kickback in the amount of $6,910.12. (Pls'. Compl. ¶ 9). This higher interest rate, of course, increased Plaintiffs' settlement costs. *Id.* at ¶¶ 33, 35, 36. Specifically, Plaintiffs allege that Household violated the: Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; Home Owner Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639; Consumer Credit Protection Act ("CCPA"), 15 U.S.C.S. § 1601 et seq.; Ohio Consumer Sales Practices Act ("OSCPA"), Ohio Revised Code § 1345.01 et seq.; and the Ohio Racketeer Influenced and Corrupt Organizations Act ("ORICO"), Ohio Revised Code § 2923.31 et seq. *Id.* at ¶¶ 18–80. Plaintiffs further allege that Household: (1) committed fraud in the inducement by telling Plaintiffs they would get a lower loan rate than they got; (2) negligently misrepresented the loan rate Plaintiffs would receive; (3) caused Plaintiffs emotional distress; and (4) engaged in a civil conspiracy. *Id.* Household filed an answer to Plaintiffs'

Complaint on October 8, 2004. (Doc. # 22).

At the time Plaintiffs filed their complaint, a class action lawsuit certified under Fed.R.Civ.P. 23(b)(3) and involving Household as a defendant was ongoing in the Northern District of California.[1] The original lawsuit was filed on February 2, 2002, with which later cases were consolidated. (Defs.' Mem. Supp. Dismiss at 3). The case settled in December 2003, at which time the court issued a preliminary order approving the settlement. The preliminary order, among other things, certified the settlement class as follows:

> Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court preliminarily certifies, solely for purposes of effectuating this Settlement, a "Settlement Class" defined as:

> All current and former borrowers of Household Finance Corporation, Beneficial Corporation, Household Insurance Group and Household Realty Corporation ("HFC/Beneficial") (and of any subsidiary or parent, whether direct or indirect, of HFC/Beneficial) who:

> (a) On or after January 1, 1999 and on or before December 24, 2003, entered into a real estate secured loan originated or processed at a United States retail consumer lending branch of HFC/Beneficial or of any subsidiary or parent, whether direct or indirect; or

> (b) On or after January 1, 1998, but before January 1, 1999, entered into a real estate secured loan originated or processed at a United States retail consumer lending branch of HFC/Beneficial or any subsidiary or parent, whether direct or indirect, of

---

**1.** *In re Household Lending Litigation ("Household Litigation"),* N.D. CA Case Nos. C02–1240, 02–2529, 02–4646, 02–4867, 02–5520, C03–0368.

HFC/Beneficial in California, Massachusetts, Washington, Pennsylvania, New Jersey, Minnesota, Maine, or Michigan.

(Defs.' Reply Ex. A, Second Revised Preliminary Approval Order ¶ 2).

Plaintiffs are former borrowers of Household Finance Corporation who entered into a real estate secured loan processed at Household Finance Corporation's Columbus, Ohio consumer lending branch on July 27, 1999. Therefore, Plaintiffs fall within the class as certified above.

The United States District Court for the Northern District of California also established and approved the notice requirements in this preliminary order:

> The Court approves, as to form, the Mailed Notice and the Publication Notice ... and finds that the mailing of the Mailed Notice and distribution of the Publication Notice substantially in the manner and form set forth in Paragraph 8 below meet the requirements of Federal Rule of Civil Procedure 23, and of Due Process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

*Id.* at ¶ 6.

Specifically, Paragraphs 8 and 9 provided that notice of the settlement was to be sent via first class mail to the last known address of all Settlement Class Members pursuant to Household's records. Additionally, the settlement was to be published in *USA Today's* national edition twice, once in two consecutive weeks. *Id.* at ¶¶ 8, 9.

Furthermore, the notice provided detailed instructions on how to opt out:

> Any person falling within the definition of the Settlement Class who desires to request exclusion from the Settlement Class shall do so on or before 21 days before the Fairness Hearing by mailing to the Settlement Administrator a request for exclusion that includes the requesting party's name, address, telephone number and HFC/Beneficial loan number, and that is personally signed by the person requesting exclusion. No request for exclusion will be valid unless it is made in the manner described. No request for exclusion will be valid unless it is postmarked no later than 21 days before the Fairness Hearing.

*Id.* at ¶ 10.

Household filed this Motion for Summary Judgment, alleging that Plaintiffs claims are barred by *res judicata* because Plaintiffs failed to opt-out of the California class in accordance with the settlement agreement. It is to an examination of Household's motion that the Court now turns.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir.2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genu-

ine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 234 (6th Cir.2003). A genuine issue of material fact exists " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Muncie,* 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad,* 328 F.3d at 234–35 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## B. Adequacy of Notice to Opt Out of the Particular Class

 Plaintiffs first assert that they were not given adequate notice by the Household class administrator in order to opt out of the particular class. (Pls.' Mem. Opp'n 2). In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court held:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are

reasonably met, the constitutional requirements are satisfied.

*Id.* at 314–15, 70 S.Ct. 652.

In order to fulfill this fundamental due process requirement, a class action certified under Fed.R.Civ.P. 23(b)(3) must meet the following notice guidelines prescribed under Fed.R.Civ.P. 23(c)(2)(B):

[T]he court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who. requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

In compliance with the Second Revised Preliminary Approval Order determined by the United States District Court for the Northern District of California, the class administrator for the Household Litigation mailed notice of the class action settlement "starting on December 22, 2003 thru February 13, 2004 via First–Class mail to 904,-178 potential members of the class. Additionally, [the class administrator] caused notice to be published in *USA Today* on February 11, 2004 and February 19, 2004." (Defs.' Reply Ex. B, Redell Decl. ¶ 4). The notice itself satisfied each 23(c)(2)(B) requirement, including the right to opt out:

In order to opt out and exclude yourself from the Settlement Class, you must mail a "Request for Exclusion" to the Settlement Administrator at ——[sic]. Your request must be in writing and

postmarked by [21 days before Fairness Hearing], 2004. To be effective, a Request for Exclusion must contain: (a) the name of this case (*In re: Household Lending Litigation,* Case No. 02–1240 CW, U.S. District Court, Northern District of California); (b) your name, address and telephone number; (c) information identifying your loan or loans, such as the loan number, date of loan, amount of loan, and address of the property; (d) a statement that you and all other borrowers named on your promissory note are seeking exclusion; and (e) your signature and the signature of all other borrowers named on the promissory note. If the Request for Exclusion is not postmarked by the deadline, you will be included automatically in the Settlement Class and you may be eligible to receive Settlement payments as summarized above. You will also be legally bound by the proposed Settlement, including provisions releasing the Defendants, as more fully described below and in the Settlement Agreement, if you do not submit a Request for Exclusion or if your Request for Exclusion is postmarked after the deadline.

(Defs.' Mem. Supp. Ex. 2, Proposed Mail Notice at 2).

The district court determined in its Final Approval Order and Judgment that this notice was "the best notice practicable," and it satisfied all parties' due process rights. (Defs.' Reply Mem. Supp. Dismiss, Final Approval Order and Judgment ¶ 11).

Plaintiffs in the case *sub judice* claim that they never received notice of the Household class litigation, which resulted in their inability to make an informed decision on opting out of the identified class. (Pls.' Mem. Opp'n 2). This claim, however, does not deem the notice inadequate. *Moore's Federal Practice* states:

An individual member of a Rule 23(b)(3) member [sic] who fails to receive notice, despite a proper court order that is fully complied with by the parties, does not necessarily escape the preclusive effects of a judgment rendered in a Rule 23(b)(3) class action (as the class member would in the situation when notice was never ordered). Instead, a class member who has failed to receive actual notice normally is bound by the judgment, particularly if he or she was sent notice by first-class mail. If a class member who did not receive notice subsequently brings an individual action and the preclusive effect of the class judgment is asserted as a defense, the class member who failed to receive actual notice of the class action may litigate whether he or she will be bound by the class action judgment, by litigating whether the notice ordered in the class action was adequate.

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.101[3] (Matthew Bender 3d ed.2004). *See also Weinberger v. Kendrick,* 698 F.2d 61, 71 (2nd Cir.1982) (notice sent to individuals' last known address and notice published in the *Wall Street Journal* constituted adequate notice, even though some members of the class did not receive actual notice); *Jordan v. Global Natural Res. Inc.,* 102 F.R.D. 45, 51 (S.D.Ohio 1984) (due process does not require actual notice to all class members, and constructive notice by publication will suffice to inform potential class members).

The fact that Plaintiffs did not receive actual notice of the settlement agreement, which included the requirements for excluding themselves from the class, does not dictate that the notice was insufficient or in violation of their due process rights. The district court approved the Mail Notice and the Publication Notice, and the class administrator acted accordingly. It

cannot be said that the approved notice did not "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314–15, 70 S.Ct. 652. Therefore, Plaintiffs' claim that the notice was inadequate is unconvincing.

### C. Satisfying Exclusion Requirements by Filing and Serving a Lawsuit Prior to the Opt-out Deadline

■ Plaintiffs next argue that filing their lawsuit against Defendants in state court sufficiently satisfied the opt-out requirements defined by the class settlement agreement. This argument relies on a court's interpretation of the flexibility permitted under Fed.R.Civ.P. 23(c)(2).

Wright and Miller's *Federal Practice and Procedure* states:

> Rule 23(c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity. Nonetheless, considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice.

7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1787 (2d ed.1986).

In accordance with the proposition of Professors Wright and Miller, Plaintiffs assert that their claims against Defendants are not barred by the doctrine of *res judicata* because they elected to opt out of the class litigation by filing and serving a lawsuit against Defendants prior to the opt-out deadline. (Pls.' Mem. Opp'n Dismiss at 2). To support this claim, Plaintiffs cite

*McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D.Ca.1976).

In *McCubbrey*, the court considered the petitioners' claims that respondents, plaintiffs in state court suits who failed to opt out of the class settlement, were barred by the doctrine of *res judicata* from bringing actions on matters already addressed in the *McCubbrey* suit (the class action). *Id.* at 65. There, the court analyzed the positions of ten respondents who neither participated in the settlement nor requested exclusion from the class to determine whether the person sought to be bound was a member of the class, and whether due process requirements were satisfied in the prior litigation. *Id.* at 67.

The first group consisted of respondents who instituted suits against the petitioner prior to receipt of the notice of the proposed settlement of the class action. The court found that the contents of the notice requirement failed to adequately inform individuals involved in pending litigation that their actions would be terminated if they did not choose to opt out. *Id.* at 68. According to the court, the language in the notice itself did not meet the due process requirements of reasonableness established under *Mullane. Id.* at 68. Consequently, none of the respondents was barred from filing an independent suit against the petitioners. *Id.* at 69.

The second group consisted of respondents who filed suits after receipt of the class action notice but prior to termination of the opt-out period. The court found that these respondents, by filing individual claims, had "expressed a desire not to participate in the settlement in a written document *containing the information requested in the class notice." Id.* (emphasis added). In making this determination, the court considered two opposing views used by authorities when determining the "de-

gree of latitude to be afforded an absent member seeking exclusion from a class suit." *Id.* The more rigid view proclaims "that liberal relief from failure to follow requisite exclusion procedures will erode finality of complex adjudications, discourage class action settlements, permit return of the former option of one-way intervention, and place a burden on judicial resources." *Id.* (citing *In re Four Seasons Sec. Litig.,* 502 F.2d 834, 843–844 (10th Cir.1974)). In contrast, the more liberal view holds "that any reasonable expression of a request for exclusion should serve to relieve a class member from a class suit." *McCubbrey,* 71 F.R.D. at 70 (citing *Bonner v. Texas City Indep. School Dist.,* 305 F.Supp. 600 (D.Tex.1969)).

The *McCubbrey* court adopted the liberal view. First, it took into consideration the exclusionary requirements contained in the notice. To be excluded, interested parties needed to mail a written request for exclusion to the Attorney General's office on or before June 26, 1973. *McCubbrey,* 71 F.R.D. at 69. The written request should have contained the following: the party's name, current address, number of lots, and name of the petitioners' project or projects in which the lots were located. *Id.* According to the court, respondents' filing an individual claim satisfied all of the notice requirements, with the exception of mailing it to the identified address. *Id.* To the court, this was an adequate expression of a desire not to participate in the settlement. *Id.*

Furthermore, the court considered the attention given to the respondents' claims by the petitioners: "After receipt of the complaints, during the exclusion period, [petitioners'] counsel communicated with respondents' attorney to discuss the details of the litigation and to request additional time to file a responsive pleading." *Id.* at 71. The court found that this conduct signified acceptance by the petitioners of the class members' desire to opt out.

Together, these two acts demonstrated to the *McCubbrey* court that the respondents had taken steps to opt out of the class, as distinguished from absent members who did nothing during the opt-out period yet sought exclusion from the class after the opt-out deadline had expired. *Id.* Accordingly, the court held that these respondents had effectively opted out of the class settlement and could bring individual actions against the petitioners. *Id.*

The third and final group consisted of respondents who filed suit after the opt-out period had ended. Two respondents from this group argued that they should be excluded because they failed to receive notice. Finding this argument to be unconvincing, the court reiterated the "best efforts" requirement established by *Mullane:* "[N]otice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since the objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable." *Id.* at 74 (quoting *Mullane,* 339 U.S. at 319, 70 S.Ct. 652).

According to the court, the petitioners fulfilled their requirement for effectuating notice to this third and final group of respondents. They mailed first-class notice to all class members, posted notice at every site of petitioners' projects, and published notice on two occasions in twenty newspapers. *McCubbrey,* 71 F.R.D. at 74. These respondents had not followed the opt-out requirements; thus, they were barred from initiating any individual suits.

Plaintiffs in the case *sub judice* mistakenly equate themselves with both the first and second group of the *McCubbrey* respondents. Here, Plaintiffs were not part of pending litigation at the time of filing

their suit; instead, they filed their individual suit against Household Realty Corporation *after* notice had been sent to settlement class members and before the opt-out period ended. Therefore, their situation more closely resembles the situation of *McCubbrey's* group two respondents.

Similar to the situation involving *McCubbrey's* group two respondents, this Court has already established that *In re Household Lending Litigation* notice was adequate, even though Plaintiffs here claim that they did not receive actual notice. Furthermore, the record is clear as to when Plaintiffs filed their action against Defendants—March 22, 2004; this date was between the time *In re Household Lending Litigation* notice was received (beginning on or about December 22, 2003 thru February 13, 2004) and the period to opt out was terminated (April 9, 2004). The record also shows that Plaintiffs' Complaint in the individual action satisfied several of the elements of the Request for Exclusion, i.e., it indicated their names, addresses, and some information identifying their loans. Finally, Defendants exhibited that they received notice of this suit by taking action to have it removed to federal court on April 30, 2004.

The facts in the instant case, however, are distinguishable from those in *McCubbrey*. First, the *McCubbrey* Request for Exclusion lacked the same amount of detail required by the request in this case. There, class members electing to opt out were required to send to the Attorney General's office their name, current address, number of lots, and name of the petitioners' project or projects in which the lots were located. The *McCubbrey* court found that the respondents, by filing individual lawsuits, had "expressed a desire not to participate in the settlement in a written document containing the information requested in the class notice." *Id.*

at 69. In contrast, the Request for Exclusion here required the name of the case; the party's name, address and telephone number; information identifying the loan or loans, such as the loan number, date of loan, amount of loan, and address of the property; a statement that the party and all other borrowers named on the promissory note were seeking exclusion; and the party's signature and the signature of all other borrowers named on the promissory note. Furthermore, it required that the request be sent to the settlement administrator twenty-one days before the Fairness Hearing, and that failure to do so would result in automatic inclusion in the class. Plaintiffs satisfied only a few of these requirements: their complaint indicated their names, addresses, and some loan information. It cannot be said that the Plaintiffs' Complaint sufficiently contained the required exclusionary information.

Moreover, the attention given to the respondents' claims by the petitioners in *McCubbrey* occurred during the exclusion period. *Id.* at 71. This fact strengthens the argument that respondents were effectuating a desire to opt out, and that petitioners were aware of this desire. On the other hand, Plaintiffs here filed their complaint approximately two weeks before the opt-out deadline and served it to Defendants only four days before that deadline. The expression of an intent to notify Defendants of Plaintiffs' desire to be excluded is shielded by an appearance that Plaintiffs were making a last minute effort.

■ The liberal view of fulfilling opt-out requirements centers on a "reasonable expression" of a request for exclusion. This reasonableness standard is not satisfied where parties notified of a class settlement agreement and opt-out period choose to file a lawsuit which only nominally fulfills the requirements of a detailed Request for Exclusion.

## III. Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs Frost and Campana are barred from filing an individual lawsuit against Household. Defendants' Motion to Dismiss, which the Court has treated as a Motion for Summary Judgment, is **GRANTED.** (Doc. # 6).

The Clerk shall enter judgment accordingly and terminate the case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED.**