[Cite as *McAdams v. Mercedes-Benz USA, L.L.C.*, 2018-Ohio-4078.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Pattiann McAdams, :

    Plaintiff-Appellant, :

                                      No. 17AP-120

v. : (C.P.C. No. 15CV-1566)

Mercedes-Benz USA, LLC, et al., : (REGULAR CALENDAR)

    Defendants-Appellees. :

---

D E C I S I O N

Rendered on October 9, 2018

---

**On brief:** *Luper Neidenthal & Logan, LPA, Gregory H. Melick*, and *Matthew T. Anderson*, for appellant. **Argued:** *Matthew T. Anderson.*

**On brief:** *Benesch, Friedlander, Coplan & Aronoff, LLP, Jennifer M. Turk*, and *Michael J. Meyer*, for appellees. **Argued:** *Jennifer M. Turk.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Pattiann McAdams, appeals a judgment of the Franklin County Court of Common Pleas entered on January 20, 2017, granting summary judgment to defendants-appellees, Mercedes-Benz USA, LLC ("Mercedes USA") and Mercedes-Benz of Easton ("Mercedes Easton") (collectively, "Mercedes"). We agree with the trial court that Mercedes successfully demonstrated that the evidence on which McAdams intended to rely to prove her claims regarding her vehicle's transmission was her own inadmissible lay opinion instead of an expert opinion and, as such, was insufficient to preserve a genuine issue of material fact for trial on all of her claims. Even though McAdams successfully opted out of a class action in order to pursue her own litigation, she was unable to show by the evidence that a genuine issue of material fact remained affecting whether she may have

been entitled to judgment on all her claims as a matter of law. Thus, we affirm summary judgment with respect to McAdams' transmission-related claims and reverse with respect to her balance shaft gear claims.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 23, 2015, McAdams filed a pro se complaint against Mercedes in the Franklin County Court of Common Pleas. (Feb. 23, 2015 Compl.) She complained of mechanical problems she experienced with her 2006 ML350, a type of sport-utility vehicle manufactured by Mercedes USA and sometimes serviced by Mercedes Easton. She alleged that Mercedes was liable for repair and replacement costs to correct a defective balance shaft gear and an allegedly defective transmission conductor plate which McAdams had been compelled to replace during her ownership of the SUV, partially at her own expense. Both Mercedes USA and Mercedes Easton filed answers. (Apr. 27, 2015 Mercedes Easton Answer; Apr. 27, 2015 Mercedes USA Answer.)

{¶ 3} Approximately one and one-half year later, on October 31, 2016, Mercedes filed a motion for summary judgment. (Oct. 31, 2016 Mot. for Summ. Jgmt.) Principally, Mercedes' motion was based on three arguments: They argued that McAdams' claims about mechanical problems with the balance shaft gear were foreclosed by a class action that included McAdams, and she did not opt out of that litigation. *Id.* at 1, 7-11. Mercedes also argued that McAdams had no evidence except her inadmissible lay opinion instead of an expert opinion that problems with her vehicle's transmission existed and should have been diagnosed while the vehicle was still under warranty. *Id.* at 1-2, 7-20. Finally, Mercedes argued that McAdams had admitted that she did not purchase the vehicle from any of the defendants and that there was a lack of privity to support any potential breach of contract claim. *Id.* at 2, 20-21. To support summary judgment, Mercedes filed the deposition of McAdams containing exhibits A-G and documents (exhibits A-E) evidencing the class-action lawsuit from the United States District Court for the Northern District of California.

{¶ 4} On December 14, 2016, McAdams (who had by this time retained counsel) filed a memorandum contra the motion for summary judgment. (Dec. 14, 2016 Memo. Contra.) McAdams argued that Mercedes waived their res judicata defense based on the class action suit because they failed to raise it in their answers, that McAdams had effectively opted out of the class by filing the present suit, and that genuine issues of

material fact existed as to the other parts of her lawsuit. *Id.* at 1, in passim. McAdams attached to her memorandum contra a copy of the vehicle master inquiry for her ML350, a copy of Mercedes' response to her pro se discovery requests, and a copy of a notice of the class action settlement.

{¶ 5} On January 20, 2017, the trial court ruled against McAdams and in favor of Mercedes on all three of Mercedes' arguments for summary judgment. (Jan. 20, 2017 Decision & Entry.) The trial court reasoned that McAdams' membership in the class was undisputed as was the fact that she never formally opted out. *Id.* at 4. It held her to be bound by the class action settlement and that her current claims regarding the balance shaft gear to be subject to res judicata. *Id.* The trial court concluded that both Mercedes USA and Mercedes Easton had properly raised the defense of res judicata in their answer when they pled a defense of "estoppel." *Id.* at 4-5. Notwithstanding scholarly and out-of-jurisdiction authority for the proposition that filing an individual lawsuit can constitute an opt-out, the trial court found that Ohio law binds class members to class action results in the absence of a formal opt-out. *Id.* at 5.

{¶ 6} The trial court found that McAdams' only evidence that the transmission conductor plate was defective from its time of manufacture or damaged early enough in her ownership of the SUV that it should have been detected and fixed while still under warranty came from McAdams' own testimony. *Id.* at 6-8. The trial court found that McAdams was not an expert and not qualified to testify to such matters. *Id.* It, therefore, did not find that her testimony created a genuine issue of fact and found against her. *Id.*

{¶ 7} As for McAdams' contract claim, the trial court construed the pleadings to allege a breach of the warranty contract, notwithstanding the fact that McAdams' pro se complaint appeared to allege a breach of the original purchase contract. *Id.* at 7; Compl. at ¶ 80-83. The warranty is the only contract in the record to which any defendant could arguably have been a party.[1] (Decision & Entry at 7.) The trial court found the only arguable breach of the warranty in the record was the failure to diagnose and repair the transmission conductor plate under warranty in 2011. (Decision & Entry at 7.) Again, the trial court

---

[1] McAdams originally purchased the ML350 from an out-of-state dealer which is not a party to this lawsuit. (McAdams Dep. at 16-17.)

found McAdams' opinion about the condition of the transmission plate in 2011 to be inadmissible and it found in favor of Mercedes. *Id.*

{¶ 8} McAdams now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 9} McAdams asserts two assignments of error for review:

[1.] The trial court erred in granting summary judgment, as Appellant's balance gear shaft claims are not barred by the class action settlement in *Seifi v. Mercedes-Benz.*

[2.] The trial court erred in granting summary judgment, as numerous disputed issues of material fact exist concerning Appellant's claims relating to the transmission conductor plate.

## III. DISCUSSION

### A. Standard of Review

{¶ 10} Civ.R. 56(C) provides that:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Supreme Court of Ohio has explained:

Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; *see also, e.g., Esber Beverage Co. v. Labatt United States Operating Co., L.L.C.*, 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 11} "Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 631, fn. 4 (1992); *see also, e.g., Guernsey Bank v. Milano Sports Enters.*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 59 (10th Dist.);

*Cunningham v. Children's Hosp.*, 10th Dist. No. 05AP-69, 2005-Ohio-4284, ¶ 18.  But, in deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts."  *Byrd* at ¶ 25.  When reviewing a trial court's decision on summary judgment, our review is de novo, and we, therefore, apply the same standards as the trial court.  *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

### B. First Assignment of Error – Whether the Trial Court Erred in Concluding that McAdams was Bound by the Class Settlement

{¶ 12}  The trial court found that the parties had not disputed that McAdams would be a member of the class assuming she did not validly opt-out and that she never formally opted out.  (Decision & Entry at 4.)  On appeal, McAdams still does not contest those facts but rather argues that Mercedes failed to preserve their claim of res judicata based on the class action settlement and, in any case, filing this action amounted to an opt-out.  Thus, we accept the undisputed facts as found by the trial court and instead turn to address the related legal questions.

### 1.  Whether Defendants Sufficiently Raised *Res Judicata*

{¶ 13}  McAdams argues that res judicata is a defense that must be raised in the first responsive pleading.  Civ.R. 8(C); Civ.R. 12(B); *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, ¶ 28; *Jim's Steak House v. Cleveland*, 81 Ohio St.3d 18, 20 (1998) ("While *res judicata* was the bone of contention between the parties in the court of appeals, we instead find for Jim's for the reason that the city never filed an answer to Jim's amended complaint, and therefore waived its opportunity even to raise *res judicata* as an affirmative defense."). (Emphasis sic.)

{¶ 14}  In both Mercedes USA's and Mercedes Easton's answers, the fourth defense reads, "[p]laintiff's claims are barred, in whole or in part, by the doctrines of waiver and estoppel."  (Mercedes Answer at ¶ 87; Mercedes Easton Answer at ¶ 87.)  The trial court found that this was sufficient under the principle of liberal pleading standards to constitute a pled defense of res judicata.  (Decision & Entry at 4-5.)  McAdams disagrees.  She notes, for example, that Ohio Rule of Civil Procedure 8(C) refers to estoppel and res judicata as separate items in its list of avoidances and affirmative defenses.  (McAdams Brief at 16-17.)  She thus argues raising one is insufficient to raise the other.

{¶ 15} McAdams' argument falls short of the analysis that legal concepts may have different labels but be part of an overall precept or doctrine. For example, estoppel is one name for a family of concepts that together are taken to form the doctrine of res judicata. As the Supreme Court has explained:

> The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel). *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 1995 Ohio 331, 653 N.E.2d 226 (1995), citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969) and *Krahn v. Kinney*, 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, (1989).

*Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, ¶ 7. In other words, res judicata includes two types of estoppel, claim preclusion (estoppel by judgment) and issue preclusion (collateral estoppel). Given this fact, it would hardly be a liberal reading of the pleadings (as required by Civ.R. 8(C)) to say that Mercedes did not plead res judicata when they pled "estoppel." Thus we agree Mercedes sufficiently pled res judicata to avoid waiving the defense.

### 2. Whether McAdams Sufficiently Opted-Out of the Class

{¶ 16} McAdams' deposition revealed that she was fully aware of the class action and had communicated with class counsel about whether or not she should join the class. (McAdams Dep. at 44-45, 138-39, 151-56.) She explained she decided not to join the class because it did not fully represent her grievances against Mercedes and testified she informed class counsel of her decision. *Id.* at 152-54. According to an April 8, 2015 notice from Mercedes USA, the deadline to opt-out of the class was June 27, 2015. (Ex. C, Dec. 14, 2016 Memo. in Opp., Class Action Notice at 4.) At the time the notice was issued in April 2015, McAdams (in addition to notifying class counsel of her decision) had already filed this lawsuit on February 23, 2015.

{¶ 17} The trial court found that McAdams had not successfully opted-out of the class because she had not formally done so. It rejected her argument that she could have opted-out by other informal means stating:

> Plaintiff cites to a series of obscure cases from around the country, as well as a learned treatise. The problem with these citations is that they are in no way binding on this Court. The Court will follow well established Ohio precedent and find that Plaintiff was required to formally opt-out.

(Decision & Entry at 5.)  We agree with the trial court that the cases cited by McAdams were not binding upon it, being out of jurisdiction.  However, we were unable to find (and neither the trial court nor Mercedes has cited) any cases representative of a "well established Ohio precedent" dictating that opt-outs must be formal.  *Id.*  None of the three Ohio cases cited by Mercedes addresses the question of whether an opt-out must be formal in order to be considered sufficient.  (Appellee Brief at 10, citing *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 19-20, 29 (1996); *Bank of New York v. Jordan*, 8th Dist. No. 88619, 2007-Ohio-4293, ¶ 14; *Schmidt v. AT&T, Inc.*, 8th Dist. No. 94856, 2010-Ohio-5491, ¶ 15.)  For example, the prior history section of *Chance* merely remarked that the trial court denied a motion for leave to intervene and requested more time to consider whether to opt-out.  The court in *Chance* did not discuss or consider what is adequate for opting-out.  In the absence of binding precedent in this instance, we consider non-binding sources for guidance.

{¶ 18} In *Seacor Holdings, Inc. v. Mason*, the United States Fifth Circuit Court of Appeals summarized federal case law on what is adequate for opting-out:

> Case law from other circuits and from the district courts suggests that an opt out request need not perfectly conform to the format chosen by the district court or the proposed settlement agreement to effectively express a desire to opt out of a class action settlement. For example, in *In re Four Seasons Securities Laws Litigation*, the Tenth Circuit concluded that notice of an intent to opt out was communicated by a letter sent to a trustee and the plaintiffs' attorneys from a class-member bank, inquiring whether the bank could submit a modified form so that it could remain a member of the class and still pursue a separate suit previously filed in state court. 493 F.2d at 1289-91; *see also Self v. Ill. Cent. R.R.*, No. CIV. A. 96-4141, 1999 U.S. Dist. LEXIS 6428, 1999 WL 262099, at *1-2 (E.D. La. Apr. 29, 1999) (construing a motion to remand a case to state court as sufficiently expressing an intent to opt out when 586 individual plaintiffs "vigorously opposed" removal and inclusion with the class action and following remand, proceeded in state court without notice of the need to opt out of the federal action); *Bonner v. Tex. City Indep. Sch. Dist. of Tex.*, 305 F. Supp. 600, 617 (S.D. Tex. 1969) (declining to certify a class action and relying on the trial testimony of three potential class members that they did not wish to be involved in the action in any way as evincing a desire to opt out of the potential class).

> These decisions logically follow from the desire not to require class members "to retain counsel and prepare a formal legal document" in order to opt out while preventing excessive informal opt outs that "might pose problems of authenticity and ambiguity." 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1787 (3d ed. 2005). In cases often involving hundreds of unrepresented and potentially unsophisticated parties, some courts have concluded that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded." *Id.* Although we have not addressed the precise requirements for allowing class members to informally opt out of class settlements, other courts have concluded that reasonableness is key. *Cf. In re Four Seasons*, 493 F.2d at 1291 ("A reasonable indication of a desire to opt out ought to be sufficient." (emphasis added)); *Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to opt out should suffice." (emphasis added)); *Johnson v. Hercules Inc.*, No. CV298-102, 1999 U.S. Dist. LEXIS 23974, 1999 WL 35648160, at *5 (S.D. Ga. Apr. 28, 1999) ("The Court requires nothing more, and nothing less, than an unequivocal, explicit, reasonable, and timely request for exclusion." (emphasis added)).

*Seacor Holdings, Inc. v. Mason (In re Deepwater Horizon)*, 819 F.3d 190, 196 (5th Cir.2016).

{¶ 19} And although no state court in Ohio appears to have squarely determined what is adequate to opt-out of a class action, the United States District Court for the Southern District of Ohio has. In *Frost v. Household Realty Corp.*, 61 F.Supp.3d 740 (S.D.Ohio 2004), the Southern District discussed and applied a California decision, *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D.Cal.1976), in which that federal district court had considered several groups of potential class members who attempted to opt-out in different ways at different times. One particularly relevant group "consisted of respondents who filed suits after receipt of the class action notice but prior to termination of the opt-out period." *Frost* at 746. The Southern District recounted how the *McCubbrey* court treated that group as follows:

> The court found that these respondents, by filing individual claims, had "expressed a desire not to participate in the settlement in a written document *containing the information requested in the class notice.*" [*McCubbrey*, 71 F.R.D. at 69] (emphasis added). In making this determination, the court

considered two opposing views used by authorities when determining the "degree of latitude to be afforded an absent member seeking exclusion from a class suit." *Id.* The more rigid view proclaims "that liberal relief from failure to follow requisite exclusion procedures will erode finality of complex adjudications, discourage class action settlements, permit return of the former option of one-way intervention, and place a burden on judicial resources." *Id.* (citing *In re Four Seasons Sec. Litig.*, 502 F2d. 834, 843-844 (10th Cir. 1974)). In contrast, the more liberal view holds "that any reasonable expression of a request for exclusion should serve to relieve a class member from a class suit." *McCubbrey*, 71 F.R.D. at 70 (citing *Bonner v. Texas City Indep. School Dist.*, 305 F. Supp 600 (D.Tex. 1969)).

The *McCubbrey* court adopted the liberal view. First, it took into consideration the exclusionary requirements contained in the notice. To be excluded, interested parties needed to mail a written request for exclusion to the Attorney General's office on or before June 26, 1973. *McCubbrey*, 71 F.R.D. at 69. The written request should have contained the following: the party's name, current address, number of lots, and name of the petitioners' project or projects in which the lots were located. *Id.* According to the court, respondents' filing an individual claim satisfied all of the notice requirements, with the exception of mailing it to the identified address. *Id.* To the court, this was an adequate expression of a desire not to participate in the settlement. *Id.*

Furthermore, the court considered the attention given to the respondents' claims by the petitioners: "After receipt of the complaints, during the exclusion period, [petitioners'] counsel communicated with respondents' attorney to discuss the details of the litigation and to request additional time to file a responsive pleading." *Id.* at 71. The court found that this conduct signified acceptance by the petitioners of the class members' desire to opt out.

*Frost* at 746-47. The *Frost* decision adopted *McCubbrey*'s treatment but concluded that the parties in *Frost* had satisfied "only a few" requirements of the opt-out notice in filing their suit. *Id.* at 748. Thus, despite applying *McCubbrey*, the court in *Frost* found that the opt-out had been insufficient. *Id.*

{¶ 20} In this case, McAdams communicated with class counsel about whether or not she should join the class. She decided not to join the class, informed class counsel of

her decision, and then sued Mercedes well before the deadline to submit an opt-out notice. (McAdams Dep. at 44-45, 138-39, 151-56; Class Action Notice at 4; Feb. 23, 2015 Compl.) The settlement notice required a signed opt-out letter to include the person's name, address, telephone number, VIN of the subject vehicle, dates of ownership, whether the person would be a class member in the absence of an opt-out, and the fact that the person seeks to opt-out. (Class Action Notice at 4.) McAdams' complaint was not signed and did not provide her telephone number. (Feb. 23, 2015 Compl.) But the complaint did provide her name, address, VIN number of the vehicle, dates of ownership, and a detailed recitation of the problems McAdams had experienced, which would have made clear to any reader that, but for her intention to pursue the case on her own, she could have been a class member. *Id.* at ¶ 1, 4, in passim. Particularly, given that she filed her complaint before the notice of how to opt-out was issued and continued to pursue the case even while the class action was ongoing, we find that her lawsuit was a sufficient "reasonable expression of a request for exclusion." *Frost* at 748.

{¶ 21} The trial court erred in concluding that McAdams' claims were res judicata as a result of the class action settlement. She opted-out of the class action and thus (notwithstanding the fact that Mercedes did not waive the defense of res judicata) McAdams' claims regarding the balance shaft gear are not res judicata. We, therefore, sustain McAdams' first assignment of error.

### C. Second Assignment of Error – Whether the Trial Court Erred in Concluding that McAdams had Failed to Demonstrate a Genuine Issue of Material Fact as to the Elements of her Claims Regarding the Transmission Conductor Plate

{¶ 22} McAdams testified during her deposition that her ML350 Mercedes Benz model car had apparent difficulty accelerating in 2011. (McAdams Dep. at 27.) Records show that McAdams informed the service personnel that the gas pedal was sticking and that the SUV felt like it had no power. (Ex. B at 10, McAdams Dep.). Service personnel at Mercedes Easton informed her that they believed the issues were caused by the rug (floor mat) sticking under the gas pedal. *Id.* at 27, 30-31, 73-74, 159; Ex. B at 10, McAdams Dep. McAdams testified that the SUV accelerated fine after that visit. (McAdams Dep. at 74.) Repair records confirm that visit was in early March 2011. (Ex. B at 10, McAdams Dep.) McAdams' warranty expired later in March. (McAdams Dep. at 17-20.)

{¶ 23} Almost four years later, in January 2015, the SUV again failed to properly accelerate. (McAdams Dep. at 27-31; Ex. D at 1-2, McAdams Dep.) There is no evidence in the record about whether the gas pedal felt as if it was sticking on this occasion. Another Mercedes dealer that was not a defendant in this case diagnosed this acceleration problem as a faulty transmission conductor plate. (McAdams Dep. at 27-33; Ex. D at 1-2, McAdams Dep.) It made the necessary repairs at a cost of $1,181.37 to McAdams. (Ex. D at 2, McAdams Dep.) McAdams stated it was her opinion the transmission conductor plate had been faulty in 2011 and possibly when she bought the automobile in 2008. *Id.* at 20-21, 62-64, 139-41. She said she believed Mercedes Easton had not performed the proper diagnostics when her SUV had experienced problems in 2011 and instead had wrongly concluded the rug was to blame rather than the transmission conductor plate being the culprit. *Id.* at 63-64, 69. McAdams testified she believed that Mercedes knew about the transmission problem because they had issued a service bulletin relating to the transmission conductor plate. *Id.* at 159-64. She also testified she believed that the variety of problems with the SUV were related to one another. *Id.* at 120 ("Yes, I do feel like they were symptomatic of the same problem, yes.").

{¶ 24} However, McAdams admitted to a "limited knowledge of cars," that she had no experience working on vehicles, and had never performed any of her own repairs. *Id.* at 12-13, 144. She also admitted that she had no documentation regarding what diagnostic procedures Mercedes Easton performed in 2011. *Id.* at 69. And the "service bulletin" which McAdams referenced in her deposition was not a Mercedes document but, rather, a post from a publicly accessible website. (Ex. F at 18-19, McAdams Dep.; McAdams Dep. at 159-64.) Moreover, the purported service bulletin was dated April 8, 2011, and post-dated both McAdams' purchase of the SUV and the expiration of her warranty. (Ex. F at 18-19, McAdams Dep.; McAdams Dep. at 16-20, 164-67.)

{¶ 25} The trial court concluded that McAdams was unqualified to offer an opinion about whether the transmission conductor plate in her SUV was defective or whether it was malfunctioning in 2011 such that Mercedes Easton should have discovered it and repaired it under warranty at that time. (Decision & Entry at 5-8.) The trial court found that Mercedes had correctly pointed out the evidence McAdams relied on was her own inadmissible opinion, unsubstantiated by either expertise or personal knowledge and, on

that basis, it granted summary judgment to Mercedes.  *Id.*  In her brief, McAdams offers two primary arguments against this conclusion.  She argues that Mercedes did not submit any evidence to support their motion for summary judgment and, thus, failed to carry their burden under Civ.R. 56, and she was giving a permissible lay opinion under Evid.R. 701 in her deposition.  (McAdams Brief at 25-38.)  At oral argument, McAdams' counsel also argued the existence of the "service bulletin" as evidence corroborating McAdams' opinion that the transmission conductor plate was defective or damaged during the period of her warranty.

{¶ 26} The Supreme Court has discussed the relative burdens of movants and nonmovants in summary judgment cases:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  McAdams argues that Mercedes failed to meet this standard because they submitted no evidence from their own technicians and employees.  (McAdams Brief at 28, 34-35.)

{¶ 27} Though the initial burden on a motion for summary judgment belongs to the movant, the ultimate burden of proving the case still belongs to the plaintiff.  Thus, while the "moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case," the moving party can discharge its burden by submitting the evidence developed by the plaintiff

during discovery and pointing out that such evidence, even if undisputed, is legally insufficient to permit the plaintiff to meet its burden at trial. *Dresher* at 293. To this, the plaintiff may then respond and meet its "reciprocal burden" with additional Civ.R. 56 evidence or an argument about why the evidence before the court either entitles it to judgment as a matter of law or creates genuine issues of material fact that must be resolved at trial. *Id.*

{¶ 28} Mercedes met their initial burden in this case when they came forward with the evidence of McAdams' opinion through her deposition testimony and records she produced in discovery and persuasively argued that this evidence was insufficient proof of her claims as a matter of law. *See* Mot. for Summ. Jgmt., in passim; McAdams Dep. in passim; Exs. A-G, McAdams Dep. McAdams was free to offer additional evidence or to present arguments about the evidence to successfully demonstrate that she was entitled to judgment as a matter of law or at least to present her case to a jury because of a genuine issue of material fact that only a jury could decide.

{¶ 29} The primary reason McAdams did not meet her reciprocal burden is that she relied almost exclusively on her own opinion that the transmission conductor plate was defective or damaged while the SUV was still within warranty, inadmissible because it was a lay opinion and lacking in the evidentiary quality of an expert opinion necessary for consideration on summary judgment in this case. *Tokles & Son, Inc.* at 631, fn. 4. And McAdams', in her brief, appears to concede that she is not an expert on automobiles; she admitted as much in her deposition stating, for example, that she had only "limited knowledge of cars," that she had no experience working on vehicles, and had never performed any of her own repairs. (McAdams Brief at 32; McAdams Dep. at 12-13, 144.) Thus, her opinion did not meet standards of admissibility to support her claims as expert opinion evidence.

{¶ 30} We note that admissible lay opinions are "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. For example, a witness to an accident could testify about whether a vehicle sustained visible damage in the accident. *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 24-27. A witness who saw a traffic light fall onto a truck could testify that

the falling light was caused by a slipping cable grip where the witness saw the cable grip supporting the light slipping and tested the cable grip after the accident to confirm that it slipped when put under stress. *Wittensoldner v. Ohio Dept. of Transp.*, 10th Dist. No. 13AP-475, 2013-Ohio-5303, ¶ 13-14. In contrast, McAdams never directly perceived the condition of the transmission conductor plate, and it is speculative (rather than "rational") to conclude that the acceleration issue in 2011 shared the same cause as the acceleration issue four years later in 2015. *See* Evid.R. 701(1). Mercedes Easton concluded that the 2011 acceleration issue was caused by interference between the accelerator pedal and the floor mat (as indicated by the sticking pedal) and McAdams testified that the SUV accelerated normally after that was corrected until the incident several years later in 2015. (McAdams Dep. at 27, 30-31, 73-74, 159; Ex. B at 10, McAdams Dep.; Ex. D at 1-2, McAdams Dep.)

{¶ 31} Even as a lay opinion, McAdams' opinion was not sufficiently supported by observation or perception to be reliable as evidence to overcome Mercedes' motion for summary judgment. We hold that the trial court correctly determined as a matter of law that McAdams' opinion was not appropriate Civ.R. 56 evidence for McAdams to have met her reciprocal burden. *Tokles & Son, Inc.* at 631, fn. 4.

{¶ 32} The trial court also correctly disregarded the service bulletin McAdams referenced in respect to the transmission conductor plate, because it was material from a public site, not a verbatim copy of a Mercedes service bulletin. (Ex. F at 18-19, McAdams Dep.; McAdams Dep. at 159-64.) Regardless of its source, the purported Mercedes service bulletin post-dated both McAdams' purchase of the vehicle and the expiration of her warranty. (Ex. F at 18-19, McAdams Dep.; McAdams Dep. at 16-20, 164-67.) The trial court properly found no genuine issue of fact about whether Mercedes knew of her car's alleged transmission problem either at the time of purchase or when the SUV was still under warranty. Civ.R. 56(C) (focusing the analysis on "material" facts "genuine[ly]" in dispute.).

{¶ 33} The trial court correctly concluded no genuine issues of material fact existed in the summary judgment record and that Mercedes USA and Mercedes Easton were entitled to judgment as a matter of law on McAdams' claims regarding the transmission conductor plate. Because of its decision on res judicata, the trial court did not consider whether the same could be said regarding McAdams' claims about the balance shaft gear. Thus, we remand for consideration of those claims.

{¶ 34} To the extent that Mercedes' brief may be understood to argue that we should apply a similar analysis to consider whether there was a genuine issue of material fact with respect to McAdams' claims on the balance shaft gear within our de novo review, we note that even a de novo review still must be a review of what the trial court did. That is:

> [Civ.R. 56] "mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 1992 Ohio 95, 604 N.E.2d 138 (1992); *accord Schmucker v. Kurzenberger*, 9th Dist. No. 10CA0045, 2011 Ohio 3741, ¶ 14 (expressing unwillingness to consider grounds in support of summary judgment on appeal where the trial court has not engaged in a review of the issue in the first instance); *Stratford Chase Apts. v. Columbus*, 137 Ohio App.3d 29, 33, 738 N.E.2d 20 (10th Dist.2000) (remanding a matter to the trial court for initial consideration of an argument advanced in support of summary judgment).

*Cristino v. Admr.*, 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 27. In this case, the trial court essentially dismissed McAdams' claims regarding the balance shaft gear without ever considering the Civ.R. 56 evidence or arguments because it found res judicata applied. (Decision & Entry at 4-5.) Hence, were we to undertake an analysis of the balance shaft gear claims under Civ.R. 56, we would, in fact, be the first court to be doing so. As that is inconsistent with *Cristino* and our role as a reviewing court, we decline to do so.

{¶ 35} McAdams' second assignment of error is overruled.

## IV. CONCLUSION

{¶ 36} Mercedes carried its burden to show that the evidence on which McAdams intended to rely with respect to her claims regarding her vehicle's transmission was solely her own inadmissible opinion and was insufficient to create a genuine issue of material fact. McAdams failed to satisfy her reciprocal burden, and, thus, summary judgment on her transmission-related claims was properly granted to Mercedes. We, therefore, overrule McAdams' second assignment of error. Since we find that McAdams did successfully opt-out of a class action that would otherwise have made her claims regarding her vehicle's balance shaft gear res judicata, we sustain her first assignment of error. The grant of summary judgment is reversed insofar as it relates to McAdams' balance shaft gear claims.

This matter is affirmed in part, reversed in part, and remanded to the Franklin County Court of Common Pleas for further proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*

**TYACK and HORTON, JJ., concur.**

_____